[No. 4637.]

## S. L. MASTICK *v.* MARCUS L. CAVE ET ALS.

ACT OF CONGRESS CONFIRMING LAND TITLES IN CALIFORNIA.—If a selection of more than one hundred and sixty acres of public land is made, as lieu land, under the statute of this State, passed April 22d, 1861, and the land thus selected is reduced to forty acres by a grant made to a railroad company, and by allotments to pre-emptioners prior to the Confirmatory Act of Congress, passed July 23d, 1866, the fact of such reduction does not prevent the Confirmatory Act from taking effect on the land.

IDEM.—If public land in this State was selected as lieu land, in accordance with the statutes of this State in force at the time of the selection, and prior to the passage of the Act of Congress passed in July, 1866, to quiet land titles in this State, and the Register of the Land Office was notified of the selection, the title of the State to the same was confirmed by said Act of Congress, although made of unsurveyed land, and void by reason thereof.

APPEAL from the District Court, Twentieth Judicial District, County of Santa Clara.

Ejectment to recover the northeast one-quarter of the northeast one-quarter of section thirty, township six south, range two west, Mount Diablo meridian.

On the 9th day of September, 1861, the plaintiff made application to Leander Ransom, the State Locating Agent of this State, to locate for him, and to be allowed to purchase from the State, the north one-half of the southeast one-quarter, and the southwest one-quarter of the southeast one-quarter of section nineteen; and the northeast one-quarter and the fractional northwest one-quarter of section thirty; and the fractional southwest one-quarter of same section; township six south, range two west, Mount Diablo meridian. The application was for said land as lieu land, in lieu of the east half of a section sixteen, which was included in a private grant.

The land was then unsurveyed public land, and it was also within the belt of land granted to the Central Pacific Railroad Company of California by the Act of Congress passed in 1862. By this grant, and by subsequent allowance of pre-emption claims, (for prior to the passage of the Act of Congress of July 23rd, 1866, the land was reduced to the forty acres sued for) Ransom made the location on the 26th day of December, 1861, and notified the Surveyor-General thereof; and he, on the 25th day of April, 1862, approved of the location. The selection, being made of unsurveyed land, was void under the laws of the United States. The statute of this State in force in 1861 (Stats. 1861, p. 219, sec. 4) did not permit such location to be made for less than one hundred and sixty acres. The land was not surveyed by the United States until 1865, and the plat of the township was filed in the Register's office on the 15th day of July that year. Mastic, the plaintiff, made payment of twenty per cent. of the purchase-money and one year's interest in advance on all the land selected, in June, 1862, and the Surveyor-General of this State gave him a certificate of purchase. On the 17th day of July, 1865, Ransom notified the Register and Receiver of the United States Land Office that the State had selected the forty acres sued for. On the 3rd day of January, 1871, the Commissioner of the General Land Office certified over to the State the forty acres sued for. The State

issued a patent for the demanded premises to the plaintiff on the 20th of March, 1871. On the 6th day of December, 1866, the defendant, Cave, settled on the land with his family, and on the 3rd day of January, 1867, he filed his declaratory statement as a pre-emptor. On the 6th day of December, 1867, he appeared before the Register and Receiver to prove up and pay for the land, and Mastic also appeared and contested his right. The Register and Receiver refused to allow Cave's pre-emption claim, and their decision was confirmed by the Commissioner of the General Land Office and the Secretary of the Interior on appeal. This action was commenced August 15th, 1872. The plaintiff had never been in possession of the demanded premises. The Court rendered judgment for the defendants, and the plaintiff appealed from the judgment.

*Houghton & Reynolds*, for the Appellant.

The laws of California authorized the location on unsurveyed lands (sec. 5, Act of 1861, p. 219); but the laws of the United States only authorized lieu lands to be taken from among the lands surveyed by the United States.

This defect is cured by the Act of Congress approved July 23d, 1866, entitled "An Act to quiet land titles in California."

The first section of that act provides: "That in all cases where the State of California has heretofore made selections of any portion of the public domain, in part satisfaction of any grant made to said State by any Act of Congress, and has disposed of the same to purchasers in good faith under her laws, the lands so selected shall be and hereby are confirmed to said State."

This act operates to cure the defect that would otherwise have existed in the plaintiff's title. But for this confirmation the location would have been void, because made of unsurveyed lands, and it was to cure just such defects that the Act of 1866 was passed.

The defendant's settlement was not made until more than five months after the Act of 1866 was passed, and he therefore is not protected by its provisions, and the proviso, in terms, ap-

plies only to those whose rights attached prior to the passage of the act.

In short, the right of the State to convey the land to the plaintiff had become perfect before the defendant settled on the land, and he could therefore acquire no right as against the State whatever.

The point is made that by the act of the Legislature of California, approved April 22d, 1861, application could not be made for less than one hundred and sixty acres, and that as but forty acres were listed to the State, the application was invalid.

We deem it a sufficient answer to this to call attention to the fact found, that the application was for more than one hundred and sixty acres, but as other rights intervened before the listing to the State to the greater portion of that applied for, and only the forty acres in question was subject to such location, that alone could be conveyed to him by the State, and the application would be valid to that extent.

*Moore, Laine, Delmas & Leib,* for the Respondent.

The selection, being for unsurveyed land, was void. (*Grogan v. Knight,* 27 Cal. 515.) But it is insisted that by virtue of the Act of Congress of July 23rd, 1866, the title of the State is confirmed. But the State law in force in 1861 did not permit the selection of less than one hundred and sixty acres. (Sec. 4, Stats. 1861, p. 219.) The land selected was reduced to forty acres, and the Act of Congress did not confirm the title to the forty.

The Act of July 23rd, 1866, did not help this selection in whole or in part.

The proviso to the first section of the act limits its confirmatory scope; and this selection was within that proviso, and was, therefore, not confirmed, for the reason that the larger portion of the selection was granted to the railroad company before the date of the acts, and another portion was covered by pre-emption claims; hence there was no confirmation of the selection.

This township was surveyed in 1865 by the United States, and under the Act of 1866, *supra,* it was the duty of the State

officers to take action in the premises.    (See second section of Act of July 23rd, 1866.)    This was never done.

By the COURT:

If the land in controversy was properly listed over to the State by the Commissioner of the General Land Office, with the approval of the Secretary of the Interior, the plaintiff is entitled to a recovery.   The selection made in 1861 was made in accordance with the laws of the State then in force, and the Register of the proper Land Office was, in the same year, notified of such selection; and these acts brought the case within the first and second sections of the Act of Congress of July 23rd, 1866, to quiet land titles in California, unless the fact that the amount of land included in the selection was reduced below one hundred and sixty acres by reason of the grant of land to the Western Pacific Railroad, and by the allotment of certain other portions of the lands to pre-emption claimants before the passage of the act of Congress prevented the act from having any operation upon the remaining portion of the lands included in the selection — the forty acres in controversy in this case. We are of the opinion that the act confirmed to the State the forty acres in controversy, and that the lands were properly listed over to the State.

Judgment reversed and cause remanded, with directions to render judgment on the findings for the plaintiff.