[No. 6,754.—In Bank.]

## F. O. WILKINSON v. EDWARD MERRILL.

STATE LANDS—JURISDICTION OF LAND OFFICERS—ESTOPPEL—LAW OF THE CASE.—The decision of the Court on a former appeal (reported 52 Cal. 424), held to be the law of the case.

ID.—FILING OF PLAT—PUBLIC LANDS.—When the filing of a plat is withdrawn by the proper authority, it is as though the map had never been filed, and the day of its return to the files is, in contemplation of law, the date of its filing. *Held*,accordingly, in such a case, that the presentation of a claim, under the Act of July 23rd, 1866, for land confirmed by that act to the State, was within time where presented within the prescribed time after the re-filing of the plat.

APPEAL from a judgment for the defendant, and from an order denying a new trial, in the Seventeenth District Court, County of Los Angeles. SEPULVEDA, J.

*Hartman & Haley*, for Appellants.

*Henry Hancock*, for Respondent; cited the decision of this Court on the former appeal. (52 Cal. 424.)

McKEE, J.:

In a contention, under an Act of Congress passed July 23rd, 1866, between the defendant and the plaintiff in this case, before the register and receiver of the United States land office, involving the rights of the parties to a tract of land, which is now, as it was then, the subject of controversy between them, the commissioner of the land office, by his judgment, canceled the pre-emption claim of the plaintiff to the land, adjudged that the locations, which had been made by the defendant upon the land under the laws of the State, were regular and valid, and that the State was entitled to have the land listed to it for the use of the defendant. That judgment was afterwards affirmed by the Secretary of the Interior, and under it, the land was thereafter listed to the State.

Notwithstanding the judgment, the plaintiff claims the right to purchase the land from the State against the locations which were made upon it by the defendant, and which were declared by the judgment to be regular and valid.

But the judgment is decisive of the rights of the parties to

the land. Such was the decision of the late Supreme Court, when the case was before it on a former appeal. "The decision of the land department," says the Court, "was conclusive against the plaintiff who subsequently sought to acquire title from the State." ( *Wilkinson* v. *Merrill*, 52 Cal. 424.)

That decision must be regarded as the law of the case, unless the case itself has undergone a change in its facts or the pleadings. The facts of the case are substantially the same. The pleadings have been changed; for, when the remittitur went down to the Court below, the plaintiff amended his complaint, by alleging matters of fraud and fraudulent imposition by the defendant, on the officers of the United States, which, it was charged, controlled their decision in the controversy between the defendant and the plaintiff; by which the land was awarded to the State for the use of the defendant. The charges were denied by the defendant, and the issue raised by them constituted the only new feature in the case.

Upon the trial, the Court below found: "That the selection approved by the commissioner of the general land office, and affirmed by the Secretary of the Interior, was *not* procured by fraudulent representations and contrivances of the defendant, or by mistake in law by the commissioner or Secretary of the Interior, or from want of information of the facts concerning the location of Edward Merrill."

It is assigned as error, that the finding is not supported by the evidence; and a like assignment is made to almost each particular finding in the case. But the assignments are unsustainable; for the evidence in the record before us sufficiently sustains the finding, as well as the other findings of fact in the case; none of them is contrary to the evidence, and each is sufficiently sustained by it.

Again: it is objected that the conclusion of law drawn by the Court from its findings, to the effect that the defendant is entitled to purchase the land from the State, is erroneous, because his application to purchase was not made within ninety days after the filing of the township map in the office of the register and receiver, as provided in § 3 of the Act of July 23rd, 1866. The map was filed in the office on the 27th of April, 1868, but it was afterwards withdrawn, and was refiled on the

21st day of November, 1871. Defendant made his application to purchase the land in January, 1872, and supplemented it by other applications after that date. The application was made within ninety days after the refiling. When the filing of a map is withdrawn by the proper authority, it is as though the map had never been filed, and the day of its return to the files is, in contemplation of law, the date of its filing.

Judgment and order affirmed.

McKINSTRY, J., SHARPSTEIN, J., and THORNTON, J., concurred.

MYRICK, J., dissenting:

A brief history of this land, gathered from the transcript, will be of service in ascertaining the rights of the parties.

At all times, from a day prior to the acquisition of California until December 25th, 1875, the land in controversy was claimed by the holders of the Mexican grant of the Rancho Sausal Redondo to be within the exterior lines, and to be a part of the rancho. Hancock, as Deputy United States Surveyor, made a survey of the rancho, by which survey the land in controversy was excluded. As County Surveyor, Hancock made a survey of the land by section and subdivision.

1857.—June 23rd, school-land warrant No. 156 was located on behalf of the defendant Merrill by Hancock, County Surveyor, on the east one-half of the northwest quarter of section 21, township 2 south, range 13 west, S. B. M.

1858.—The Hancock survey of the rancho was rejected by the United States Surveyor-General.

1868.—February, Hansen, Deputy United States Surveyor, made a survey of the rancho by order of the Surveyor-General, to segregate the grant from the public lands.

1868.—April 27th, plat filed in the United States land office.

1868.—May 12th, selected by the State, in the office of the register of the United States land office, for Merrill, under the warrant No. 156.

1868.—May 27th, plat withdrawn by order of the land department of the United States.

1868.—July 3rd, the United States Surveyor-General directed Thompson, Deputy United States Surveyor, to resurvey the rancho.    In the same year, the resurvey was made.

1870.—Plaintiff Wilkinson went into possession, where he has remained ever since, using the land, and has made substantial and valuable improvements.

1871.—November 21st, plat refiled.

1872.—March 12th, plat again withdrawn, and survey suspended.

1872.—June 15th, order of the land department relieving the suspension.

1872.—July 27th, application by Hancock, on behalf of Merrill, to relocate school-land warrant No. 156.

1875.—December 25th, survey of the Rancho Sausal Redondo finally approved by the commissioner of the general land office, which determined that the land was not within the limits of the rancho.    This was, substantially, the Hansen survey.

1876.—February 8th, plaintiff applied to purchase the land under the laws of this State.

1876.—March 20th, the land was listed to the State.

Merrill has been a non-resident of this State since 1858; there is no evidence that he ever saw the land.

Under this state of facts, neither party could acquire any title, or foundation of title, from the State prior to December 25th, 1875.    Until that time, it had not been determined whether the land would be a part of the Mexican grant or a part of the public domain.    Until such determination, a school-land warrant could not be located upon it, and the acts of officers, Federal or State, in that direction, would be without authority, and therefore void.    The fact that officers assume to act and issue papers purporting to convey the title of the Government, Federal or State, where they have no authority, does not aid their grantee.    Merrill is not aided by the Act of July 23rd, 1866; that act relates to selections theretofore made of any portion of the *public domain;* the land in controversy was not, then, a portion of the public domain open for selection.

As between the parties to this controversy, Merrill has no right to purchase the land from the State.