[In Bank. — March 16, 1883.

DANIEL SULLIVAN, PETITIONER, *v.* JAMES W. SHANKLIN, SURVEYOR-GENERAL AND EX-OFFICIO REGISTER OF THE STATE LAND OFFICE, RESPONDENT.

MANDAMUS — PUBLIC LAND — PURCHASE FROM THE STATE — FAILURE OF TITLE — RIGHT OF THE PURCHASER TO RELIEF. — Mandamus will not lie to compel the register of the State land office to issue a certificate under section 3571 of the Political Code to a purchaser of land from the State, who has paid the purchase money and received a patent, although the land may not have been the property of the State, such purchaser having acquired the title of the United States to the land by availing himself of the provisions of the Act of Congress of the 1st of March, 1877, entitled "an act relating to indemnity school selections in California."

APPLICATION for a writ of mandamus. The facts are stated in the opinion of MR. JUSTICE McKEE.

*J. C. Bates,* for Petitioner.

*A. L. Hart,* Attorney-General, for Respondent.

McKee, J. — This is an application for a writ of mandate to
compel the respondent, as register of the State land office, to
issue to plaintiff a certificate under section 3571 of the Political
Code.

The facts as they appear upon the petition are, that in the
year 1863 the State of California selected a tract of land known
and described as the southeast quarter of section eleven, town-
ship four north, range one east, Mount Diablo meridian. This
land was selected as a portion of the public lands of the United
States, to which the State was entitled in satisfaction of certain
congressional grants which had been made to her. After selec-
tion the State sold and transferred the land, by a certificate of
purchase issued under her laws, to the assignor of the petitioner.
Subsequently the land was listed to the State by the secretary
of the interior of the United States, and upon payment to the
State of the purchase money for the land and surrender of the
certificate of purchase, the State issued a patent for the land to
the petitioner.

Afterwards, on March 10, 1881, the petitioner applied to the
United States register, at San Francisco, to purchase the same
land from the United States under the provisions of an act of
Congress, entitled "an act relating to indemnity selections in
the State of California," approved March 1, 1877, and in sup-
port of his application made proof to the satisfaction of the
register that he was the owner and holder of the State patent to
the land, and an innocent purchaser of the same for a valuable
consideration, etc. Upon making that proof the commissioner
of the general land office granted his application, allowed him
to purchase the land from the United States, canceled the list-
ing of the State, and upon payment of the purchase money
under the act of Congress issued to him a receipt which entitles
him to a United States patent for the land. Yet, although the
undisputed owner of the land by titles thus acquired from the
United States and the State, the petitioner insists that the State
patent "was illegally and improperly issued, and was, and has
always been, null and void, for the reason that the land sold
was, and is, not the property of the State of California."

Therefore the petitioner, in legal effect, asks that the contract between him and the State be rescinded, and that the purchase money paid to the State be refunded, and as preliminary to that end that the register be compelled to issue to him a certificate under section 3571 of the Political Code.

A purchaser of land from the State is not entitled at law or in equity to recover back the purchase money, unless the State, as an act of grace, consents to it. Such an act is said to be contained in sections 3571 and 3572, Political Code. The first provides "that if any land sold is not the property of the State, the holder of the certificate of purchase or patent may receive in exchange therefor from the register a certificate showing the amount paid and the class of land upon which the payment was made." And the second, for payment of the amount specified in the certificate out of the swamp and overflowed land fund, if the land sold was of that class of land, and if it was not, then out of the fund into which the purchase money was paid.

It is as a holder of the State patent for the land in dispute that the petitioner claims to be entitled to the certificate demanded. But he is not entitled to it unless the land did not belong to the State; for the State register has no authority to issue the certificate unless the land sold was of that character. Upon the ascertainment and determination of that question the demand of the petitioner is founded, and upon it the performance of duty imposed by the law upon the register is made to depend. The mere assertion of the petitioner's demand is not proof of the fact that the land did not belong to the State, nor is it as a fact admitted by the nature of the demand itself, nor does it, self-evidently or otherwise, arise out of the admitted circumstances of the transaction of purchase from the State. For, as admitted owner and holder of the patent from the State for land admitted to have been listed to the State by the authorities of the United States, the petitioner has acquired, under the Act of Congress of July 23, 1866, whatever title passed to the State by that "listing" (*Mastick* v. *Cave*, 52 Cal. 67), and there is no question, if the land was of the character contemplated by the act of Congress, that the title of the State under the grants to her, attached to the land, for listing, or the act of certifying the land to the State, was the mode established by congressional

enactment for completing the title of the State to such lands as she had selected in part satisfaction of her congressional grants.

But it is contended that the " listing " of this land did not have the effect of transferring or rendering perfect the title of the State to it, because the land was not of the character contemplated by the act of Congress, and intended to be granted, and that the listing and the patent founded upon it are void.

In support of this contention reference is made to *Rosencrans* v. *Douglas*, 52 Cal. 215. But that case involved a controversy between private parties about a tract of land, which each of them claimed under acts of Congress; and it became necessary for the court to interpret the acts for the purpose of ascertaining and determining the right; and as preliminary thereto it was held that the defendant in the case, as a qualified pre-emptor, who had filed his application to purchase the land under the pre-emption laws, and had offered to prove up his claim and tendered the purchase money, was in such privity with the title of the United States as enabled him to show that the " listing " of the land to the State, through which the plaintiff claimed title, was void, because the land was not of the class of land which, under the acts of Congress, the land department of the United States was authorized to list to the State.

Whatever may be said as to the law of that case, it is wholly inapplicable to the demand of the petitioner; for there is no pending contest between him and any other person in which his right to the land is involved. No one questions the title which he has obtained from the State. To him, therefore, as patentee of the State, the decision of the land department by which the land was " listed " to the State is conclusive (*Wilkinson* v. *Merrill*, 52 Cal. 424; S. C. 56 Cal. 559; *Mace* v. *Merrill*, 56 Cal. 554); and, inferentially at least, upon the facts stated in his petition, the title passed from the United States through the medium of the State to him when he received his patent, and its validity or invalidity has never been determined. Who has determined it? The legislature has not, nor has any judicial tribunal; and it cannot be tried by mandamus. (*Babcock* v. *Goodrich*, 47 Cal. 488.) No officer of the State has authority to cancel a patent issued by the State for a tract of land, and refund the purchase money, upon the mere assertion by the patentee that the State

had no title to the land when she sold and conveyed it. The invalidity of the title must be admitted by the State, or by some agency of her appointment, or be judicially determined before the purchase money can be refunded. Mandamus is not the remedy.

As we have repeatedly held, the office of a writ of mandate is to compel the performance of a purely ministerial duty. A ministerial duty is one in respect to which nothing is left to discretion. "It is," says Chief Justice Chase, "a simple, definite duty, arising under circumstances admitted or proved to exist, and imposed by law." (*State of Mississippi* v. *Johnson,* 4 Wall. 475.) No such duty arises out of the circumstances stated in petition, nor is any such imposed by the section of the Code under which the demand in this case was made; and it follows that the application must be denied.

Ordered accordingly.

Ross, J., concurring specially.—I agree that the petitioner in this case is not entitled to the writ sought. His purpose, as evidenced by the record, is to recover back from the State the money paid by him for certain land for which the State issued to him its patent, he claiming that the State had no title to convey. But it also appears that petitioner has availed himself of the benefits of the Act of Congress of March 1, 1877, entitled "an act relating to indemnity school selections in California." By that act it is provided that when land has been selected and sold by the State, but to which the State has no title, and such land is held by an innocent purchaser for a valuable consideration, such person shall be allowed to prove such facts before the proper land officer, and shall be permitted to purchase the land at one dollar and twenty-five cents per acre, not to exceed three hundred and twenty acres for any one person. Pursuant to the provisions of this act the petitioner made application to purchase the land from the United States, and according to his petition has made proof to the satisfaction of the register and receiver that he is the owner and holder of the State patent to the land, and that he is an innocent purchaser from the State for a valuable consideration. In order, therefore, to acquire the land from the general government at a special rate, and as a pre-

ferred purchaser, he represented to that government that he had already paid the State for it. For that purpose he relied upon the fact that the State had his money, and having thus secured the title, he now seeks by means of mandamus to recover back the very money on the faith and strength of which he secured the advantage. To my mind this does not appear just, and mandamus ought not to be awarded to enforce an inequitable demand. (Wood on Mandamus, p. 17, and authorities there cited.) So far as the equities of the case are concerned, the petitioner would be in an altogether different position could he say here, in effect: The State purported to sell me a piece of land, for which it received my money and gave me its patent. The State had no title, and I got nothing by the pretended sale and conveyance, and am therefore entitled to a return of my money. But this, as shown above, is by no means petitioner's position.

MORRISON, C. J., and MYRICK, J., concurred in the opinion of MR. JUSTICE ROSS.

McKINSTRY, J., SHARPSTEIN, J., and THORNTON, J., dissented.

*Garber, Thornton & Bishop,* of counsel for petitioner, applied for a rehearing, which was denied.