## THE STATE v. CLEMONS.

1. **Evidence:** DYING DECLARATIONS. Dying declarations should be excluded only when they show upon their face that they are mere opinion, and when admitted their credibility is to be determined by the jury, in view of all the circumstances under which they are made.

2. **Criminal Law:** MURDER: INSTRUCTIONS. Where a party is put upon his trial for murder in the first degree, all the degrees of criminal homcide should be explained and submitted to the jury.

*Appeal from Washington District Court.*

FRIDAY, JUNE 6.

THE defendant was indicted for the murder of John O. Dayton. He was convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for life.

He now appeals to this court for a reversal of the judgment against him.

*Henderson & Jones* and *Woodin & McJunkin*, for appellant.

No appearance for the State.

ROTHROCK, J.—I. The defendant was put upon his trial for murder in the first degree. It is urged, in his behalf, that this was erroneous because the indictment is for murder in the second degree only. The alleged defect consists in the failure to charge that the *killing* of the deceased was wilful, deliberate, and premeditated. The case of *State v. McCormick*, 27 Iowa, 402, and other cases determined by this court, are cited in support of the question made by counsel.

We have not thought it necessary to set out the indictment at length, because, as the judgment must be reversed upon other grounds, to which we will presently give our attention, the question raised upon the sufficiency of the indictment for murder in the first degree becomes immaterial and need not be determined. The trial was had for murder in the first

degree. ' The verdict was that defendant was guilty of murder in the second degree. It is conceded that the indictment is good for murder in the second degree, and defendant cannot again be put on trial for any greater degree of the crime than that of which he was convicted. *State v. Tweedy*, 11 Iowa, 350.

II. On the evening of the 19th of August, 1876, the deceased, with several other persons, was in a billiard hall in the village of Westchester, Washington county. There was a window in the north end of the hall. The lower sash of the window was up and a curtain extended down near to the bottom of the window. At about 9 o'clock the deceased was at the billiard table, with his face fronting toward the south. While standing in this position he was shot by some one from the outside through the window. The ball entered the body of the deceased between the seventh and eighth ribs, and passed through the liver and kidney. He lived four days afterward, when he died from the effect of the wound. Three witnesses, who were in the billiard saloon with the deceased at the time the shot was fired, testified that "the first seen of the firing was a flash through said window." On the same evening there was an examination made and a bullet-hole was found through the window curtain, about an inch from the bottom.

One W. H. Dayton, a brother of the deceased, and a witness for the State, testified as follows: "After deceased knew he was to die from said wound I heard him say: 'Ed. Clemons (meaning the defendant) shot me; ain't I right?'" Another witness testified as follows: "Shortly before his death I heard Dayton say it was Ed. Clemons who shot him."

This evidence was objected to by defendant, and the objection overruled. It is not urged by counsel for defendant that these declarations of the deceased were not made after the deceased had given up all hope of life, and under a solemn sense of impending dissolution, but it is claimed that the declaration testified to by W. H. Dayton should have been

1 EVIDENCE: dying declarations.

excluded, and taken from the consideration of the jury, because it was merely the statement of an opinion, and not the statement of a fact.

It is well settled that "the statement made by the deceased must be such as would be receivable if he were alive, and could be examined as a witness. Any declaration, therefore, upon mere matters of opinion, as distinguished from facts, would not be receivable." 1 Phillipps on Evidence, 297; and see 1 Greenleaf on Evidence, § 159; Wharton's American Criminal Law (3d Ed.), 312. But it is a question for the court to determine whether the dying declarations are admissible in evidence. "And after the evidence is admitted, its credibility is entirely within the province of the jury, who, of course, are at liberty to weigh all the circumstances under which the declarations were made, including those already proved to the judge, and to give the testimony only such credit as, upon the whole, they may think it deserves." 1 Greenleaf on Evidence, § 160.

In view of these well settled principles we think there was no error in admitting the dying declaration testified to by W. H. Dayton. The objection that the deceased named the defendant as Ed. Clemons instead of Ezra, his true name, we need not consider. It is nowhere shown that any other person than the defendant was intended or referred to by the deceased. The first part of the declaration is a distinct assertion that the defendant did the fatal shooting. The closing part is put in the way of an interrogatory, and it may have been for the purpose of assuring himself, not that he was correct as a matter of opinion, but that his observation of the fact was correct.

Now it was not for the court to say that the circumstances attending the infliction of the mortal wound were such that the deceased could not have seen who was his assassin. This was a question for the jury to determine from all the evidence in the case. As we understand the rule the court is warranted in excluding this class of evidence only when the dying

declaration shows upon its face that it is a mere opinion. In 1 Phillipps on Evidence, in a note to page 298, it is said : "If it be found that the deceased said 'A. B. has shot me,' or 'has killed me,' it is for the jury to find from that, and the other testimony in the case, whether the deceased intended to state a fact within his own personal knowledge or as a mere inference from other facts. In the latter case the declaration should have no weight whatever with the jury."

III. It appears from the evidence that about eleven months before the deceased was killed he was shot at by some one. The State was allowed to introduce circumstantial evidence to prove that the defendant was the person who made the prior attempt to murder the deceased. The defendant objected to the proof of the prior attempt by circumstantial evidence. It is now insisted that because the State relied wholly upon circumstantial evidence to convict the defendant all the circumstances relied upon must be proved by direct evidence. The record before us does not warrant the statement that the State relied wholly upon circumstantial evidence for a conviction. If the deceased's dying declarations should be considered by the jury as evidence entitled to consideration, there was direct evidence that the defendant was guilty. There are other facts in the case, also, which are more than mere circumstances. We need not detail them. It would not be proper to do so in view of a new trial.

As to the proposition argued by counsel that where a party is sought to be convicted upon circumstantial evidence alone the evidence of the circumstances relied upon must be direct, and not circumstantial, we express no opinion. We labor under an embarrassment in considering this case. The present Attorney General, before his accession to that office, was of counsel for the defendant in the court below. He could not, therefore, with propriety, argue the cause in this court against the defendant. The consequence is we are without an argument for the State. Counsel would have been procured upon the part of the State, but it was obvious to us

that the cause must be reversed upon grounds other than that now under consideration, and, to avoid unnecessary expense and delay, we thought it better to dispose of the case upon the abstract and argument submitted to us. For these reasons we do not determine this question. We may say this, however, that, although counsel cite us to authorities which seem to sustain their position, we will be slow to adopt any rule which would prevent any material facts in any case from being proven, by any evidence which the law recognizes as competent, whether it be direct or circumstantial.

IV. The defendant introduced certain witnesses, who testified that his general reputation as a peaceable man was good. The court in its sixteenth instruction charged the jury upon the subject of character, in substance, the same as is found in the *Webster Case*, 5 Cushing, 295. This court has, after a thorough examination of the authorities upon that question, and upon principle which we think is eminently sound, adopted a different rule from that found in the Webster case. See *State v. Northrup*, 48 Iowa, 583; *State v. Horning*, 49 Iowa, 158, and other opinions since that filed. It is due to the learned judge who tried the case in the court below to say that this trial was had before the above named opinions were filed by this court.

V. The court instructed the jury that "under the indictment the defendant may be found guilty of murder in the first degree, or murder in the second degree, or not guilty, as the evidence in your judgment demands at your hands." The jury were fully instructed as to the necessary elements of the crimes of murder in the first degree and murder in the second degree, but no instruction was given as to what constituted the crime of manslaughter. This, we think, was erroneous. The crime of manslaughter is necessarily included in that of murder, and in all cases where a party is put upon his trial for murder in the first degree, all the degrees of criminal homicide should be explained and submitted to the jury. The Code, § 4429, pro-

2. CRIMINAL law: murder: instructions.

vides that "where there is a reasonable doubt of the degree of the offense of which the defendant is proven to be guilty he shall only be convicted of the lower degree."

It was the defendant's right to have the jury so instructed that they might find him guilty of manslaughter, if they believed from the evidence that such finding would be proper. See *State v. Walters*, 45 Iowa, 389. Under the instructions given by the court the jury were compelled to convict for murder or acquit. The degree of the crime is to be determined by the jury and not by the court, and there can be but one rule for the court in all cases.

VI. There are other alleged errors which we need not discuss. They relate to the misconduct of the jury, and other irregularities, which will not likely occur upon a new trial.

For the errors above pointed out the judgment of the court below must be reversed and the cause remanded for a new trial.

REVERSED.