## PEOPLE v. BENNETT.

### Cr. No. 261; October 8, 1897.

#### 50 Pac. 703.

**Criminal Law—Second Appeal.**—Under a charge of assault with intent to commit murder, defendant was convicted of the lesser offense of assault with a deadly weapon, and a new trial was granted him, for insufficient evidence. On a second trial he was convicted of the higher offense, and on his motion a new trial was granted on the

sole ground that he had been twice put in jeopardy for the same offense. On appeal by the people the judgment was reversed because he did not plead former jeopardy. The trial court, on return of remittitur, pronounced judgment on the verdict. Held, that the supreme court could not, on appeal by defendant from such judgment, review its former decision.

   Criminal Law.—Where the. Record on Appeal Discloses Sufficient Evidence to uphold a conviction, the judgment will not be disturbed.

APPEAL from Superior Court, Alameda County; F. B. Ogden, Judge.

C. R. Bennett was convicted of assault with intent to murder, and appeals from the judgment. Affirmed.

D. M. Connor for appellant; Attorney General Fitzgerald for the people.

PER CURIAM.—This is an appeal from the judgment rendered upon the verdict of a jury finding defendant guilty of assault with intent to commit murder. In January, 1895, the appellant, Bennett, was placed on trial before the superior court of Alameda county under an information charging him with an assault with intent to commit murder. The jury found the defendant guilty of the lesser offense of assault with a deadly weapon. He moved for a new trial upon the ground that the verdict was not supported by the evidence, and his motion was granted. In May, 1895, he was again put on trial, under the same information, before the same court and the same judge. A jury was impaneled and sworn to try the case, and without any other or further arraignment of appellant, or any new or other plea, the trial proceeded to its close, and the jury found Bennett guilty of assault with intent to commit murder. He again moved for a new trial, which was granted upon the sole ground that he had been twice put in jeopardy for the same offense. From this order the people appealed. The opinion and judgment of this court reversing the order granting defendant a new trial will be found reported in the one hundred and fourteenth volume of our reports, at page 56 (45 Pac. 1013.) By this decision it was declared that in a criminal case, tried, as this one was, under the same information and before the same court, the fact that the defendant had been acquitted of the graver charge of assault with intent to commit murder by the verdict

of the jury upon the first trial, finding him guilty of assault with a deadly weapon, could not be availed of by defendant after trial, except under an express plea of once in jeopardy, interposed by him before the trial. For this reason the order of the trial court was reversed. Upon the return of the remittitur the trial court, as was its duty to do, pronounced judgment upon defendant under the verdict of guilty of assault with intent to commit murder, and sentenced him to imprisonment in the state prison. From that judgment he prosecutes this appeal, and his counsel insists that this court erred in its former determination, in reversing the order granting him a new trial, and asks us to reconsider the question upon this appeal. But this we cannot do. All of the considerations which govern the application of the doctrine of the law of the case are present here with peculiar and exceptional force. The precise point in controversy was, in a former appeal in this same cause, decided by the court, and its decision has become final. The action of the trial judge in pronouncing sentence upon the defendant for the crime of assault with intent to commit murder was an action in which he had no discretion, but which he was commanded to perform by the judgment of the court. He could have done no other than he did without disregard of his oath. The former decision thus became the rule of law governing the rights of the parties, and the conduct of the trial judge in the determination of this question, and we have no lawful power to review our own judgments which have become final at the expiration of the constitutional period of thirty days. The subversion of the wise and long-settled rule that a previous decision of this court is conclusive in the same case upon the rights of the parties, and is not the subject of revision, would lead to such disastrous results that it may not for a moment be contemplated: Dewey v. Gray, 2 Cal. 374; Clary v. Hoagland, 6 Cal. 688; Cordier v. Schloss, 18 Cal. 576; Leese v. Clark, 20 Cal. 387; Jaffe v. Skae, 48 Cal. 543; Wilkinson v. Merrill, 56 Cal. 560. Appellant's further contention that the court erred in instructing the jury in regard to the crime of assault to murder is disposed of by what has already been said. Upon the last proposition, that the evidence is insufficient to justify the verdict, we can but repeat that it is not the province of this court to substitute its own views of the

evidence for those of the jurors, and the record discloses sufficient testimony to uphold the verdict. The judgment appealed from is therefore affirmed.

BEATTY, C. J.—I concur in the judgment solely because it has passed out of the power of the court to decide the case upon its merits. In doing so, I desire to subjoin an opinion which I prepared at the time a rehearing of the former appeal was denied, setting forth my reasons for dissenting from that order.

BEATTY, C. J.—Having dissented from the order denying a rehearing of this cause by the court in bank, and being profoundly convinced that the decision given is not only erroneous, but mischievous in its consequences, I deem the matter of sufficient importance to justify a statement of the grounds of my dissent. It is not alone because the necessary result of the judgment which has thus become final is to consign this defendant to the state prison, as a felon, upon conviction of a crime of which he has once been legally acquitted, that I feel constrained to record my earnest protest against the decision of the court, but it is more especially because the practice which must henceforth obtain in similar cases in this state is at variance with elementary and fundamental principles of pleading and procedure, unsupported by any principle or authority, and in conflict with numerous express adjudications of this court, and of the highest courts of other states of the Union. Stated in its simplest form, the point here decided is that the defendant in a criminal action can under no circumstances claim the benefit of a former acquittal except by interposing a special plea of such acquittal, and submitting the issue to a jury. To sustain this proposition I feel safe in asserting that no authority can be found in any statute, decision or text-book. At least, I have been unable, after a somewhat extended search, to discover any such authority; and certainly none is to be found in the list of statutes, texts and decisions cited by Justice Garoutte in his opinion. On the contrary, I have found and shall cite numerous well-considered cases in which the contrary has been held.

Before entering upon a particular examination of the authorities, however, it will be convenient to call attention

to the sole and simple question involved in this case, which, as it seems to me, has been wholly overlooked in the opinion of the court. The question really presented by this appeal is whether a court which has awarded a new trial of one specific issue out of several issues made by the pleadings is or is not competent and obliged to confine the trial to that specific issue. As an original proposition, it would seem to be beyond dispute that a court of record and of superior jurisdiction ought to be held to know what the issue is which it has impaneled a jury to try, and that it is its duty to confine the trial to that issue. The only authority for a new trial is the order made in that very case for a new trial, and when that order is limited, either in terms or in legal effect, to one issue, it seems absurd to say that the court must shut its eyes to its own order, and open the case to a new trial upon all the issues. If this view is correct—as I shall show that it is, both upon principle and authority—it follows that there was not upon the second trial of this defendant any question of former jeopardy involved. He was only on trial for assault with a deadly weapon. The charge of assault to murder, of which he has been acquitted, was out of the case, as much as if it never had been in the indictment, and so the jury should have been instructed. To sustain this view it is not necessary to go outside of our own decisions in search of authority. The leading case in California upon this point is People v. Gilmore, 4 Cal. 376, 60 Am. Dec. 620. The defendant in that case had been indicted for murder, convicted of manslaughter, and, on his own motion, awarded a new trial. On his second arraignment he pleaded a former acquittal. The report of the case does not expressly state what was done with his plea, or what the verdict was on the second trial, but apparently his plea was overruled and he was convicted of murder. On his second appeal, Chief Justice Murray, delivering the opinion of the court, stated the questions to be determined in this language: ''The questions presented are: (1) The prisoner having been convicted of manslaughter, can he, on a second trial, *be compelled to answer to the charge of murder?* And, (2) admitting that he cannot, whether the prisoner can again be tried for manslaughter, inasmuch as the indictment against him is for the crime of murder.'' I have italicized the con-

cluding words of the first question, to call attention to the fact that, in the opinion of Chief Justice Murray and the court, the question was not whether the defendant, on his third trial, should be allowed, as against the charge of murder, to interpose and prove a plea of former acquittal, but was whether he could, on the second trial, "be compelled to answer to that charge." An examination of the whole opinion, and of the authorities cited in support of the conclusions reached, will show that the language in which the questions for decision were stated was carefully and advisedly chosen and that the point decided was not that the plea of former acquittal should be accepted, and evidence allowed to go to the jury in support of it, at the new trial which was ordered, but that the new trial must be confined to the charge of manslaughter. Such in fact was the special direction accompanying the order remanding the cause to the district court. Now, if the defense of former acquittal must always be made by plea, and submitted to the jury upon evidence adduced before them, I should like to know how we are to justify our former supreme court in taking the matter away from the jury, and deciding it as a pure question of law, as was done in this case. The supreme court has before it only a transcript of the original record remaining in the court from which the appeal is prosecuted, and can by no possibility see any more in the record than the lower court can take notice of. And therefore when it can find from the record, as matter of law, that the prisoner stands acquitted of the higher offense charged in an indictment, the lower court must be held to take notice of the acquittal, and to give effect to it. The supreme court does not command the lower court to do what it cannot lawfully do, or what it ought not to do, or has not the power to do in the absence of such command.

In People v. Gilmore the court, speaking of the legal effect of a verdict of manslaughter upon an indictment for murder, quote and adopt the following language of the supreme court of Mississippi: "The jury, in such a case, in contemplation of law, render two verdicts—the one acquitting him of the higher crime, the other convicting him of the inferior." And this is the principle and the basis of the decision there, and in the numerous cases in which it has been followed in this and other states. And from it are deduced the effect and consequences of an order for a new trial in such cases,

viz., that such order extends only to so much of the issue as is embraced in the charge of which there was a conviction. When that case arose, section 439 of the criminal practice act was identical in terms with sections 1179 and 1180 of the Penal Code, except that it did not embrace the last clause of section 1180, commencing with the words, "or be pleaded," etc.—a clause which seems to have been added for the purpose of legislating out of existence the doctrine of People v. Gilmore, and the constitutional right which it maintains. Those sections of the Penal Code read as follows:

"Sec. 1179. A new trial is a re-examination of the issue in the same court, before another jury, after a verdict has been given.

"Sec. 1180. The granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew, and the former verdict cannot be used or referred to either in evidence or in argument, or be pleaded in bar of any conviction which might have been had under the indictment."

The attorney general contended in the Gilmore case that the whole controversy was determined by the express provisions of section 439 of the criminal practice act, and possibly the same contention might be made here, upon the terms of the above-quoted sections of the Penal Code. The argument there was that, in view of the statute, the award of a new trial necessarily embraced the whole of the issues arising upon the indictment and the original plea of not guilty. But the court construed the law otherwise. They said: "It [section 439] is, however, susceptible of another meaning, and one more in consonance with the humane and enlightened spirit of the age as well as of our jurisprudence. I understand it to mean the issue in controversy, not the one that has been settled by the jury in favor of the defendant; and I understand the words, 'placing the parties in the same position that they occupied before the trial,' as simply applying with reference to the issues undisposed of." In strict accordance with these views, the judgment was reversed, and the cause remanded to the district court, with instructions "to try the prisoner for manslaughter, in accordance with this opinion."

The next case in which this question arose in this state was People v. Backus, 5 Cal. 275. This case, like the preceding

one, is very imperfectly reported; and it does not appear from
any express statement, though it is clearly to be inferred, that
the indictment was for murder, and the verdict, "Guilty of
manslaughter." The judgment was reversed, with directions
that the prisoner should be retried for manslaughter. In this
case there was, of course, no plea of former acquittal of the
murder.

The next case in order is People v. Apgar, 35 Cal. 389, in
which the point here in controversy was directly involved in
a question of jurisdiction. The defendant had been indicted
for a felony (assault with a deadly weapon, etc.), and con-
victed of a simple assault (a misdemeanor), from which
he appealed. But the supreme court had no jurisdiction,
except of felonies; and it seems to have been considered that
its jurisdiction of the appeal depended upon the question
whether, in case of reversal, the defendant could ever be
tried again for a felony. With reference to this point, Chief
Justice Sawyer, delivering the opinion of the court, said:
"Upon the principle of these cases [People v. Gilmore and
People v. Backus], the defendant is acquitted of the higher
offense charged, *and cannot be tried again for it, so that the
case, as to that offense, is wholly ended. He was only con-
victed of the lowest offense embraced in the indictment, and,
if the judgment were reversed, he could only be tried for
that offense."* (Italics mine.) Accordingly the appeal was
dismissed.

These cases, as to the point under discussion, have never
been overruled or questioned by this court, nor, so far as I
can discover, by any court, until now, unless the expression
used by Justice McFarland in delivering the opinion of the
court in People v. Lee Yune Chong, 94 Cal. 386, 29 Pac.
776, should be held to have that effect. But clearly it can-
not be regarded as a ruling upon the question, being as purely
obiter as any dictum that ever found its way into a judicial
opinion. In that case the jury had brought in a verdict of
murder, without specifying the degree, and the court. fail-
ing to notice the defect in the verdict, had discharged the
jury. After the jurors had dispersed and gone their several
ways, the judge ordered them to be brought into court again,
and, after ordering the verdict as recorded to be set aside, in-
structed those who had been jurors to amend their verdict
by specifying the degree of the crime. This they did by re-

turning a verdict of murder in the first degree, and fixing the punishment at imprisonment for life, upon which judgment was entered accordingly. The defendant, without moving for a new trial, appealed from the judgment, and from orders of the court denying his motions for the entry of judgment of acquittal and for his discharge. Upon this state of the case, counsel, in addition to his claim that the second verdict was void and the judgment necessarily erroneous— as to which there was scarcely room for controversy—contended that this court, in reversing the judgment, could not order a new trial—first, because he had not asked for a new trial, and to subject him to a new trial without his request would be putting him twice in jeopardy; second, because the order of the court setting aside the verdict rendered before the discharge of the jury "expunged" that verdict from the record, and left the case in the same position as if the jury had been discharged without a verdict and without necessity, wherefore a new trial would be a second jeopardy; and, third, because a verdict of murder which fails to specify the degree is equivalent to no verdict, and, therefore, that the jury had been discharged without a verdict and without necessity. These were all the points made in the argument or presented by the record in that case, and it will be seen by reference to the opinion of Justice McFarland that they were each taken up, discussed and overruled, upon the authority of numerous prior decisions of this court. After having thus disposed of every question in the case, the remark quoted by Justice Garoutte was evidently superfluous, as it was entirely harmless. It was also, as applied to that case, true; for, since there was nothing in the recorded proceedings of the superior court to give color to a claim or former jeopardy, it could only have been supported by proof of facts dehors the record, for which purposes a plea would have been necessary. Against this expression found in the Lee Yune Chong case may be set the more deliberate utterance of the court in a more recent case, in which the point under consideration might have been, but was not, decided. In People v. Gordon, 99 Cal. 232, 33 Pac. 903, Belcher, C., after quoting section 1180 of the Penal Code, supra, proceeds to observe: "There can be no doubt that the granting of a new trial, upon the application of the accused, of an offense of which he has been convicted, places him in the same posi-

tion as if no trial had been had; but if it was meant by the section quoted to go further, and provide that when the indictment charges two or more offenses, and on the first trial the accused is acquitted of one of the offenses charged and convicted of another, the granting of a new trial of the offense of which he was convicted places him in the same position, as to the offense of which he was acquitted, as if no trial had been had, and thus subjects him to be tried again for the last-named offense, then the section is clearly in conflict with the provision of the constitution above quoted, and for that reason void: See People v. Gilmore, 4 Cal. 376, 60 Am. Dec. 620; Cooley on Constitutional Limitations, 6th ed., p. 401, and cases cited.''

The foregoing review of the California cases presents everything, so far as I have been able to discover, that has been decided or said with reference to the precise point involved in this case. To sum up the result, it appears that there have been three decisions in favor of the doctrine for which I am contending, and none against it. There has been one dictum, which, construed with reference to the case in which it was pronounced, is not really against it, and another, in a later case, distinctly upholding it.

Turning next to the decisions cited as authority in the opinion of the court, we first encounter the case of Commonwealth v. Olds, 5 Litt. (Ky.) 140. The defendant in that case having been placed upon trial, the jury was discharged without a verdict. When brought to trial a second time, he moved to be discharged on the ground of former jeopardy. This motion, which the court of appeals held to have been in effect a plea in bar, upon the facts alleged as to the discharge of the jury, was by the county court ''decided against him as clearly as if it had been done on demurrer'': Page 141. Nevertheless, that court permitted him to argue the question before the jury, and the result was a verdict of some sort in his favor. The report does not show what the verdict was, but, as the commonwealth appealed, I conclude that it was a verdict of former jeopardy, rather than a verdict of not guilty. The court of appeals reversed the judgment, not upon the ground that the defense had not been pleaded (they held expressly that it had been pleaded), but upon the ground that the facts alleged did not constitute a bar. What they actually decided was that the Bill of Rights contained in the Kentucky constitution added nothing to the common-law

doctrine of former jeopardy, and, consequently, that it could not be made a defense, unless there had been a verdict and a judgment of acquittal or conviction. In discussing the common-law rule they did state incidentally the unquestioned proposition "that these two pleas [autrefois convict and autrefois acquit] must be pleaded in bar, and that they cannot be given in evidence under the general issue." But this language was used, not with reference to the case before them, in which there was no question as to sufficiency of the plea, but with reference to the ordinary case of a second indictment for the same offense, as clearly appears by the language immediately following: "That when such pleas are made the great question is whether the former indictment pleaded in bar would admit the same evidence with the one to which it is pleaded." The same criticism disposes of the quotation from People v. Olwell, 28 Cal. 462. The remark there made occurs in the course of a general discussion of the common-law doctrine of former jeopardy, and is sustained by a reference to Commonwealth v. Olds. The proposition advanced no one would think of questioning, but it will be noticed that it applies expressly and solely to the case of a second indictment. There was no question in that case as to the necessity or sufficiency of a plea of former jeopardy. The defendant had appealed from the judgment upon conviction for murder without moving for a new trial, and was contending that upon a reversal of the judgment the supreme court could not order a new trial, first, because there can never be a new trial after reversal of a judgment of conviction; and, second, because, if there could be a new trial after verdict in any criminal case, there could be none where none was asked for. Both the points were ruled against him. The court did not hold, and could not have held, that he must plead his former jeopardy; for they held as matter of law, upon the record, that there was nothing to sustain the defense. Before taking leave of this pair of cases, it is not out of place to remark that Commonwealth v. Olds was expressly overruled by the court of appeals of Kentucky in O'Brian v. Commonwealth, 9 Bush (Ky.), 345, 15 Am. Rep. 715, as to the very point upon which it was cited in People v. Olwell; and the doctrine of the latter case, following the passage quoted, is certainly not now the law of this state, if it ever was. The defense of former jeopardy,

under our constitution, certainly does include more than was comprehended by the common-law doctrine, and may be maintained where a good plea of autrefois convict or autrefois acquit could not have been made.

The next case cited to sustain the opinion of the court is from Tennessee—Zachary v. State, 7 Baxt. (Tenn.) 1, decided in 1872. This case seems a little nearer being authority than any that is cited; for it did present the question under consideration here, and the court did express an opinion upon it. The defendant had been indicted in four counts, convicted upon the first, and acquitted upon the last three. Brought to a trial a second time, he moved the court to limit the trial to the first count, which motion was overruled. But the jury again acquitted him on the last three counts, and convicted him only upon the first. He appealed, however, to the supreme court, assigning error upon the ruling denying his motion, and also a number of other errors. The supreme court, in an opinion which cites not a single authority, disposes of seven assignments of error, devoting one of its shortest paragraphs to this particular one. I quote it in full: "It is said the prisoner was improperly put upon trial the second time upon the three last counts, because he had been acquitted on those on a former trial. The question was raised by motion, and not by plea of former acquittal. It was properly overruled. The question should have been raised by plea setting forth the record of the former trial and acquittal. But, even if there was error, it could not avail the defendant now, as he was again acquitted on the counts referred to. He appeals from a judgment of conviction on the first count, having been acquitted on the other counts." In other words, the court, ignoring its own previous and well-considered decision to the contrary (Campbell v. State, 9 Yerg. (Tenn.) 333, 30 Am. Dec. 417), and without assigning any reason or principle to sustain its conclusion, says: "There was no error, but, if there was, it was harmless." If such a decision could be dignified with the name of authority under any circumstances, I think its claim to that distinction will disappear when it is set beside the decision in Campbell v. State, supra. I quote the brief statement of the case from the syllabus prefixed to the report: "The defendant was acquitted upon the first and third counts, but convicted on the second. He moved for a new trial, which

was granted, and the entire verdict set aside by the court.
Upon the second trial he moved the court to put him on trial
upon the second count only. This the court refused. Upon
the second trial he was acquitted on the first and second
counts, and convicted on the third. Held, that it was error
in the court to set aside the verdict entirely, and that plain-
tiff was entitled to judgment of acquittal upon the first and
third counts, because upon these he was acquitted by the
jury upon the first trial, and that he was also entitled to judg-
ment of acquittal upon the second count, because he was
acquitted on that count upon the second trial.'' I call at-
tention to the fact that in this case defendant made his de-
fense by motion, and not by plea; to the further fact that
the question here in controversy, being directly and neces-
sarily involved, was, after full discussion and examination
of authorities, clearly decided, and the defense of former
acquittal sustained, by the court, as a pure question of law
arising upon the record, and requiring no evidence aliunde
to support it. It is to be noted, moreover, that this case
was in 1854 cited and followed in Tennessee in Slaughter
v. State, 6 Humph. (Tenn.) 410, and that these two cases,
with one other from Mississippi, are the only authorities
cited to sustain the decision in the leading California case—
People v. Gilmore, supra. It is further to be noted that it
has never been overruled or questioned in any particular
in Tennessee, but, on the contrary, has been cited and fol-
lowed on various points: In 1851, in Esmon v. State, 1 Swan
(Tenn.), 15; in 1857, in Major v. State, 4 Sneed (Tenn.), 608;
in 1860, in State v. Lea, 1 Cold. (Tenn.) 177; and in 1871 in
no less than three cases (State v. Cameron, State v. Irvine,
Mikels v. State), reported in 3 Heisk. (Tenn.) 85, 158, 330.
In view of all which, and considering that the rule so estab-
lished was a rule for the enforcement of a constitutional
right, the loose expression contained in a single line of the
opinion in Zachary v. State with reference to a point not
necessary to the decision, and really not decided, can scarcely
be called authority. Can it be supposed for a moment that
the court would have deprived the prisoner of the benefit
of his motion if their decision had depended on his right to
present his defense in that form, or that they would have
said what they did say if the point had been of any prac-
tical importance, and had been ever so little argued at the
bar?

The next case cited as authority for the decision of the court is State v. Washington, 28 La. Ann. 129. It has no application, because the prior conviction was upon another indictment and in another court, and, in terms, for another crime. Of course, it could only be made a defense by plea.

The next case is Pitner v. State, 44 Tex. 578. In that case the petitioner was asking the court, upon habeas corpus, "to try the issue of autrefois acquit." The court decided, as this court has decided in similar cases, that habeas corpus was not the proper remedy: Ex parte Cage, 45 Cal. 248. In so deciding they said that his proper course was to enter a plea in the court where the indictment was pending, and this was true, if his defense involved the proof of any fact dehors the record. The report does not show what his defense rested upon, but we are bound to assume that it did not rest exclusively upon the record of the case in which he was held, because the rule had been established by a previous decision of the same court that without any plea the defense of former acquittal in the same case is available in arrest of judgment: Jones v. State, 13 Tex. 168, 62 Am. Dec. 550. This was a case in which the defendants were granted a new trial after conviction of murder in the second degree. On their second trial they were convicted of murder in the first degree. It does not appear from any express statement in the opinion of the court or by the reporter that the defendants failed to interpose a plea of former acquittal of murder in the first degree. But the fact does clearly appear from the statement of counsel for defendant (pages 170, 171), which is not controverted by the attorney general. This shows that, without having entered any plea, they moved in arrest of judgment, and the argument of counsel is: "The trying them, therefore, on the original charge the second time, and convicting them, was erroneous, and they could avail themselves of it in arrest of judgment. It was not necessary to plead it specially, for it appeared on the face of the record": Page 171. Upon this question the court, after reviewing a number of authorities, including the Tennessee and Mississippi cases cited by our former supreme court, in People v. Gilmore, concluded the discussion as follows: "The result of our investigation is that, both on principle and on the authority of adjudged cases, the appellants, after having been acquitted of murder in the first degree and found guilty of murder in the second

degree, could not be legally tried and convicted of murder in the first degree, and the verdict so finding them cannot stand as the basis of a judgment and execution thereon.'' This case, it is to be further remarked, has never been doubted or questioned in Texas, but, on the contrary, has been cited and followed in at least fourteen subsequent cases, and, upon the precise point here in question, in Baker v. State, 4 Tex. App. 232; Cheek v. State, 4 Tex. App. 448; Robinson v. State, 21 Tex. App. 162, 17 S. W. 632; Parker v. State, 22 Tex. App. 107, 3 S. W. 100. I quote the following from Robinson v. State, 21 Tex. App. 162, and 17 S. W., page 633: ''Special pleas of former acquittal or conviction, as are provided for by statute (Code Cr. Proc., art. 525), are pleas allowable, and in most instances required, in subsequent prosecutions separately instituted for an offense which has before been tried in some other tribunal, or in the same court under another and distinct proceeding from the cause in which the pleas are interposed, and where they are essential in order to present before the court matters dehors the record before the court. Such pleas are unnecessary, and are not required in the same tribunal where the record then before or within the judicial knowledge of the court presents all the facts concerning the former trial and its result. In such cases the court is bound to take cognizance of the facts. They are a part and parcel of the case before the court, and the defendant is not required to plead them.''

The next case cited by the court is State v. Barnes, 32 Me. 534. It has no application. The former conviction (for libel) in that case was in another county, and, of course, in another court and upon a separate indictment: Page 532.

The next case cited is Rickles v. State, 68 Ala. 538. The report does not state any facts, and all that the decision says is that ''in criminal procedure a plea of *autrefois acquit* or *convict* is necessary *in order to authorize the introduction of evidence of a former proceeding* establishing the acquittal or conviction of a defendant charged with any crime. (Italics mine.) This is a proposition which no one will question, and the court rightly says that section 120 of our Penal Code declares the same principle; for that is precisely what it does declare, and all that it declares, viz., that without the plea evidence cannot be introduced. Of course it cannot. Evidence in jury cases is for the jury, but the record and its

legal effect are for the court. If the case is such that the
defense of former acquittal can only be established by evi-
dence aliunde the record, there must be a special plea to raise
the issue for the jury; but, if the defense appears on the
record, no evidence is required, and, if no evidence, of course
no plea. That the supreme court of Alabama meant this,
and nothing more, is not only evident from the language
above quoted, but is confirmed by the fact that it was at the
date of the decision cited the established doctrine of the court.
In Bell v. State, 48 Ala. 684, the precise question under dis-
cussion was directly presented, and decided in accordance
with the view for which I am contending. Upon the trial
of any indictment charging both burglary and larceny, the
prisoners were found guilty of the former only. A new trial
having been ordered, they entered a plea of former acquittal
of the larceny. But the court sustained a demurrer to the
plea, and it was not submitted to the jury; and they were
convicted on the second trial only of larceny. They then
moved in arrest of judgment "on the ground that it appeared
from the records of the court in the identical cause that
the defendants had at the former trial been acquitted, on
the identical indictment in the present case, of the identical
and same offense of which the jury found them guilty in
the present case," etc. The motion was overruled, and the
defendants appealed, assigning three errors: (1) The order
sustaining the demurrer to their plea; (2) the order over-
ruling the motion in arrest of judgment; (3) the refusal to
discharge them. If the court had deemed the plea necessary,
it could only have reversed the judgment on the first ground,
and remanded the cause, with directions to overrule the
demurrer and submit the issue of autrefois acquit to a jury.
But it did no such thing. It decided the whole case on the
questions of law presented on the last two grounds, giving
judgment as follows: "The judgment of the city court is
reversed, and a judgment must be here rendered discharg-
ing the appellants." And the opinion abounds in such ex-
pressions as this: "The legal effect of that verdict of acquit-
tal of larceny, whether any judgment was rendered on it or
not, was to put the alleged larceny as completely out of
the indictment and case as if it had never been in the indict-
ment or case"; citing our own case of People v. Gilmore, 4
Cal. 376, 60 Am. Dec. 620, the Tennessee and Mississippi

cases which it cites, Jones v. State, supra, and a large number of cases from other states of the Union.

It remains only to notice the citations from Bishop's Criminal Procedure, in order to bring this review of the authorities referred to in the opinion of the court to a close. Section 744 merely states, in Mr. Bishop's picturesque style, the undoubted proposition that, if the defendant has a particular matter of defense to prove by evidence, he must plead it. At section 813 he is speaking of a defense to a second indictment, as is manifest from his citation of State v. Barnes, supra, and in fact the whole chapter (sections 803-831) is devoted almost exclusively to cases of second indictments. But in section 821 he says: "A discharge of the jury after jeopardy begun, without verdict or the prisoner's consent, operates in law as an acquittal; and on motion, without plea, he is entitled to be set at liberty." And at the end of section 826 he says: "Assuming the record to be so made as to show the facts, it is plainly within the American doctrine to give it effect without the help of a plea." But it is at section 1271, volume 1, that he states the rule applicable to this case, as follows: "But sometimes the order for a new trial extends, by its terms or interpretation, only to a part of the indictment, and then the second trial is limited to such part." Such was the case here. The order for a new trial, by its plain legal construction, extended only to that part of the charge against the defendant upon which he had been convicted, and as to which he had been granted a new trial. This proposition is established, not only by the decisions directly upon the point in Tennessee, Texas and Alabama, which I have quoted for the purpose of demonstrating the irrelevancy of the citations from those states contained in the opinion of the court, but also by the decisions of this court in People v. Gilmore, People v. Backus, and People v. Apgar, supra. It is also sustained by the decisions in many other maturely considered cases in other states, as I shall proceed to show.

In Atkins v. State, 16 Ark. 568, the question was one of former jeopardy arising out of the discharge of a jury without a verdict, and, as claimed by the prisoner, without necessity. He attempted to plead his defense, but his plea was held to be bad in substance both by the circuit court and by the supreme court so that it became necessary to

determine whether he could make his defense without plea. As to this point the court said: "It was objected by the attorney general that the defendant could only raise the question of his right to discharge by plea, and not by motion. The objection is not well taken in this case. The defendant moved for his discharge immediately after the court discharged the jury. The facts were all known to the court, and put upon its record. It was the action of the court in progress of the trial that the defendant complained of, and, the court being cognizant of its own proceedings in the premises, no plea was necessary to enable it to determine the legal effect of discharging the jury under the circumstances. The facts being upon record, the question of the right of the defendant to be discharged from further prosecution could be raised by motion, or in arrest of judgment." A peculiar interest attaches to this case from the fact that it involved the same questions, arising in the same way, as were involved in what may justly be termed the great case of Reg. v. Winsor, 10 Cox C. C. 276, in which for the first time the defense of former jeopardy based upon the discharge of a jury without verdict in a case of felony, was considered by the highest courts of England. The prisoner having been once put upon trial on an indictment for murder, and the jury having been discharged without a verdict, when brought to trial a second time she moved to be discharged on account of the former jeopardy. Her motion was overruled, and she was convicted, and sentenced to death. The case was taken by writ of error to the queen's bench, and from that court to the exchequer chamber. There was not only a very thorough and elaborate argument of the whole case by counsel for the prisoner and the solicitor general for the crown, but in the queen's bench, where the hearing extended over several adjournments, all the judges freely participated in the discussion. The result was that they decided every point in 1866 precisely as it had been decided eleven years before by the supreme court of Arkansas in Atkins v. State, basing their conclusions upon the same grounds, though referring exclusively to English authorities. One of the questions necessarily involved in the case was whether the defense of former jeopardy could be considered upon writ of error without plea. It seems to have been assumed as a matter

of course by most of the judges that it could, but it is incidentally alluded to in the opinion of Blackburn, J., at page 316, where the same distinction is made that was afterward more tersely stated by Erle (page 329) in delivering the opinion of the exchequer chamber: "That which would be matter of plea to a fresh indictment would be ground of error upon a second trial upon the same indictment." Upon the merits of the case it was held, as in Atkins **v.** State, that the discharge of the first jury was justified by the circumstances, and that the claim of former jeopardy was not sustained. The point decided in Atkins v. State, that defense of former jeopardy could be made without plea, has arisen in several subsequent cases in Arkansas, and has always been decided in the same way. In Johnson v. State, 29 Ark. 34, 21 Am. Rep. 154, the court say: "The record of the former implied acquittal of the appellant of murder in the first degree being before the court in the very cause which it was trying a second time, it was the duty of the court to tell the jury that they could not find him guilty of that grade of offense, if such be the law, even if the appellant had not interposed a plea of former acquittal: Atkins v. State, supra." In Lavender v. Hudgens, 32 Ark. 767, and in Ex parte Barnett, 51 Ark. 217, 10 S. W. 492, decided in 1888, the same doctrine is still maintained.

The case of Brennan v. People, 15 Ill. 511, was like our case of People v. Gilmore, except that Brennan at his second trial did not plead former acquittal. The court held, nevertheless, that the order for a new trial, though general in terms, embraced only the offense of manslaughter, of which he had been convicted, and not the offense of murder of which he had been impliedly acquitted, and, therefore, that he was improperly tried the second time for murder. The case was remanded, that he might be tried for manslaughter. The decision has been followed upon various points in a great number of cases that have since arisen in Illinois, and on the precise point under consideration, in 1880, in Logg v. People, 8 Ill. App. 104, where it is said: "The point is made by the attorney for the people that in order for the defendants to avail themselves of the advantage of the verdict upon the former trial they should have pleaded autrefois acquit of the offense charged in the first count. An examination of the authorities will show that

the practice has not been uniform when the second trial has been had in the same cause, and upon the same indictment. In some of the cases it appears such plea was interposed, in others not, but in all the cases where no such plea was pleaded we have found none where the defendant has been deprived of the benefit accruing to him by such acquittal. Where a new indictment is preferred after acquittal upon a former one, there are good reasons for such plea, for it is essential that the identity of the accused and the offense charged should be established as facts upon the trial. These reasons, however, do not exist when the defendants are rearraigned upon the same indictment and record for a new trial; for there, in contemplation of law, and we might say of fact, also, the whole record is before the court for its inspection, and no question can be made that it is not the same charge, and no proof is required to establish the identity of the defendant. It would therefore seem that, according to the rules of pleading, no necessity exists for a special plea in such a case. As we understand the rule, when it is desired to spread before the court, and make them a part of the record, facts aliunde the record, in defense as a bar to the further prosecution of the cause, then it must be done by special plea; but, where the facts relied upon in defense fully and conclusively appear from an inspection of the record then before the court, no such plea is, or should be, required." I have quoted these remarks to call attention to the fact that, although the plea of former jeopardy, acquittal, etc., has frequently been interposed in cases like this (out of abundant caution of counsel no doubt), the defense has never been rejected for want of a plea in any of the numerous cases in which it was not interposed.

State v. Tweedy, 11 Iowa, 350, was in all material respects like Brennan v. People, supra, and the decision was the same. The opinion discusses the question fully, and the result is fairly summed up in these words: "The court, in its instructions in chief, as also in those asked by the state, and given, expressly tell the jury that under the indictment they could find the defendant guilty of murder in the second degree. As the record itself, as we view it, shows an acquittal of this offense, we think the instructions were erroneous (without reference to the refusal of the one asked by the defendant on the same subject), though the plea

of former acquittal was not formally pleaded.'' This case has been often cited as authority in Iowa, and, as to this particular point, affirmed in State v. Boyle, 28 Iowa, 526, and State v. Clemons, 51 Iowa, 275, 1 N. W. 546. The Mississippi cases are to the same effect: Hurt v. State, 25 Miss. 378, 59 Am. Dec. 225; Morris v. State, 8 Smedes & M. 762. And in Missouri the same: State v. Ross, 29 Mo. 48; State v. Jenkins, 36 Mo. 372; State v. Brannon, 55 Mo. 63, 17 Am. Rep. 643. And in Wisconsin: State v. Martin, 30 Wis. 216, 11 Am. Rep. 567. And in Virginia: Lithgow v. Commonwealth, 2 Va. Cas. 297; Stuart v. Commonwealth, 28 Gratt. (Va.) 953. It is to be noted that the legislature of Virginia, not being under any constitutional restriction on this point, in 1878 enacted a statute providing that, if a verdict should be set aside on motion of the defendant in a criminal case, it should open the whole issue, since which time the courts have followed that law: Briggs v. Commonwealth, 82 Va. 560. The following cases, less directly in point, but illustrating the principle, are referred to: People v. Barrett, 2 Caine (N. Y.), 304, 2 Am. Dec. 239; Ned v. State, 7 Port. (Ala.) 187; State v. Kittle, 2 Tyler (Vt.), 471; People v. Goodwin, 18 Johns. (N. Y.) 187, 9 Am. Dec. 203.

These are all the authorities on the point I have been able to find in the limited time at my disposal. No doubt, there are other—and possibly conflicting—decisions in other states, but, if so, I can only say that the citations in the briefs of counsel and in the previous decisions of this court afford no clew to their discovery. And, if the law is as laid down in the above-quoted authorities, it plainly appears that the reasons assigned for the present decision are wholly insufficient. It is said that the practice of raising the question of former jeopardy for the first time on motion for a new trial is a novel one. This may be granted, but the answer is plain. It is only novel because it is made so by the novel provisions of our Penal Code. The cases above cited show that the practice of raising the question by motion in arrest of judgment is common and approved where that motion may be based upon any error appearing on the record. But in this state the motion in arrest of judgment is limited to defects appearing on the face of the indictment: Pen. Code, secs. 1183, 1004. If a jury were to

bring in a verdict of murder under a good indictment for manslaughter, the defendant could not, under the terms of our statute, avail himself of the objection by motion in arrest of judgment. But it is certain that he could do so by motion for new trial on the ground that the verdict was against law: Sec. 1181, subd. 6. In other words, our statute has made the motion for new trial applicable to cases in which the former practice was to move in arrest of judgment. In abridging one remedy, the legislature has simply enlarged the other. It is next suggested that this mode of procedure would entirely do away with the immemorial practice of pleading former jeopardy. As to this, if it were true, as the argument assumes it to be, that the only office of the plea of former jeopardy (I use the term in its original and generic sense, in which it comprehends pleas of former acquittal, former conviction and former jeopardy based upon the discharge of the jury without verdict) is to enable the court to take the verdict of a jury as to the existence and legal effect of its own recorded proceedings in the very case it is trying, we could part with so useless a proceeding without regret. But the apprehension of losing these venerable pleas is entirely groundless. They would still remain for the only purpose they have ever served, viz., to raise an issue of fact in cases involving the resort to evidence aliunde the record. It is next suggested, as another absurd consequence of this novel practice, that this defendant, and others in like situation, could never be convicted of the minor offense of which he was formerly convicted. This apprehension is also unfounded. The court has only to instruct the jury that the defendant is on trial for the minor offense; has only, in other words, to tell the jury what the issue is that they have been sworn to try. Finally, some weight seems to be allowed to the suggestion that the defendant was guilty of trifling with the court, in sitting idly by, during the progress of the trial, and allowing himself to be tried upon a charge that was out of the case. I think this is a reproach that is scarcely deserved. A prisoner ought not to be expected to know better than the court and counsel for the state what he is being tried for. It is the business of the prosecuting attorney, if of anyone, to call the attention of the court to the nature of the charge. But in this case it appears very clearly, from matter which the district attor-

ney has taken pains to incorporate in his bill of exceptions, that the defendant and his counsel, no less than the court, were unaware of the legal effect of the former verdict and of the order for a new trial, and supposed that he was on trial for, and could be convicted of, the higher offense of which he had been formerly acquitted. Counsel discovered their mistake, however, in time, and moved for a new trial, as they had a right to do, upon the grounds, among others, that the court erred in instructing the jury that the defendant could be found guilty "as charged," and that the verdict was contrary to law, because it convicted him of an offense of which he appeared by the record to have been acquitted. The superior court, not deeming itself to have been trifled with, but recognizing its own error, granted the motion for a new trial upon this ground, and in my opinion the order should have been affirmed.

GAROUTTE, J.—The question here presented is purely one of procedure, and I have neither the time nor the disposition to devote any great amount of labor to it. But, in view of the lengthy discussion presented by the chief justice, I feel it due to myself and associates who opposed a rehearing of the original case to add a few words at this time upon the question of jeopardy. In this state, for forty-seven years, the practice has been universal to plead the special defenses of former acquittal and former conviction; and likewise has been the practice as to the plea of jeopardy, since there has been such a plea recognized by the statute of this state. It has been a practice so well understood and settled in this state that no lawyer, during that period of forty-seven years, has ever questioned it. This case presented it for the first time, and was decided in line with the law as it had always been supposed to be in this state. I see no mischievous consequences to follow from a continuation of this practice in the future. Certainly the results following from it in the past have been entirely satisfactory. The single question presented to this court upon the former appeal of this case (114 Cal. 56, 45 Pac. 1013) was, May a defendant for the first time upon motion for a new trial raise the question of a former jeopardy? There can be no question but that the legislature had the power to enact a law to the effect that no former jeopardy would be avail-

ing unless presented by a plea. By every fair intendment the legislature of this state has so provided, and beyond doubt such ought to be the law. That evil results would follow from any other course, I have pointed out upon the former appeal. The California cases cited by the chief justice have no bearing whatever upon the question of the necessity of a plea of former jeopardy, and the only case in this state where the matter is presented to this court is People v. Cage, 48 Cal. 329, 17 Am. Rep. 436. At the time that appeal was here the statute did not provide for a plea of once in jeopardy, and, the defendant at the trial desiring to raise the question of jeopardy, this court held that it might be raised under the plea of not guilty. But the court only so held by reason of the peculiar wording of the statute. The entire decision is to the effect that, if the statute at that time had allowed a plea of once in jeopardy, then the defendant would have been bound to make that plea. There is no doubt but that, in view of the embarrassment in which the court at that time found itself, the legislature immediately thereafter felt called upon to enact the law as it now stands, requiring a defendant to plead his jeopardy in order that he may rely upon it. But that case certainly does hold that the question of once in jeopardy must be raised during the progress of the trial in some way. In the Bennett case it was not even suggested until the motion for a new trial was made.

The right to raise the question, being a mere constitutional privilege extended to the accused, may be waived by him; and, under the statute of this state, that privilege must be held to be conclusively waived unless raised in the manner provided by law. It is now proposed to differentiate the present case from the general principle declared, upon the ground that the trial upon which the alleged jeopardy took place was had in the same court and upon the same indictment as the present trial. In other words, the contention, reduced to its simplest terms, is this: The former jeopardy being a record of the court, the court, taking judicial notice of its records, knew of the existence of the fact, and was therefore legally bound in some way, and at some stage of the proceedings, to act upon its knowledge, and, not doing so, an error was committed, which demands a new trial of the case. If a prisoner may waive the fact of

previous jeopardy, if that matter be a constitutional privilege only, what possible difference can it make whether the jeopardy occurred in one court rather than another? If, during the progress of the trial, a properly authenticated judgment-roll of another competent court was introduced in evidence, showing a jeopardy of the defendant for the offense for which he was then upon trial, why would not the court know of the fact of the jeopardy as fully and as completely as though it had judicial knowledge of it from its own records? And yet it is not even contended that the court could act in the case of the judgment-roll; and this concession is made for the reason that there was no plea of former jeopardy, and, there being no plea, there was no issue, and, there being no issue, the evidence was incompetent to establish any material fact of the case. A fact of which the court takes judicial notice is only material as evidence at the trial when it tends to prove some material issue, and if, in this case, the court had judicial notice of former jeopardy, the effect of such knowledge upon the part of the court was simply and alone to dispense with proof of the fact in the ordinary way—only this and nothing more. I hold it to be sound, beyond contradiction, that if competent evidence be offered to prove a fact, and it be properly rejected because there is no issue in the case upon that matter, then judicial knowledge of the same fact, existing in the mind of the court, is likewise unavailing to establish that fact. In other words, judicial knowledge of a fact serves no possible purpose upon a trial unless an issue is presented which such fact will tend to prove. By way of illustration, let us assume that during the progress of the trial of a prisoner upon a felony charge an alarm of fire is sounded, and the jurors, breaking away from the control of the officer, mingle with the people, to the extent that they become disqualified, and are at once discharged, and the trial begun anew. Or assume that a trial judge discharges a jury within a few minutes after they have retired to deliberate upon a verdict upon the ground of a failure to agree, thus presenting a doubtful question of jeopardy. Upon a second trial no question of once in jeopardy is raised by the prisoner in either of these cases. After conviction, would any court in the land, upon motion for a new trial upon the ground of once in jeopardy, grant the motion? I do not

believe it. Yet this jeopardy occurred before the same judge in the same court, upon the same indictment, and would appear by the record. If the prisoner does not raise the question of jeopardy, it being an affirmative defense or plea in bar, it must be assumed that he has waived it. It is unquestioned that he can waive it. No one is compelled to set up a plea in bar. It is conceded that the jeopardy may be waived if it occurred in another court. If it may be waived in one court, why not in the other? Perchance this defendant desired a vindication upon the charge of assault with intent to commit murder. Perchance, filled with the knowledge of his own innocence, he was confident of establishing the fact. Possibly he was impressed with a conviction that he could establish an impregnable alibi. And for all or any of these reasons, or many others which could be suggested, he may have gloried in the trial upon the greater charge, and defied his prosecutors. If he had arisen before the judge at the beginning of the trial, and there stated that he had been in jeopardy of the higher offense involved in this information, in some competent court of an adjoining county, or had even stated to the judge the fact that he had been in jeopardy in that court of the higher charge upon that information, but that he expressly waived any question of a former jeopardy, we apprehend that upon a second conviction upon such a state of facts he would have been taken at his word, and would have been required to stand the consequences. The record in this case discloses all this, and more. At the commencement of the trial the information charging the crime of assault to commit murder was read to the jury in his presence, as required by law, and his plea of not guilty to that charge was stated to the jury. The trial proceeded upon these lines, and the evidence was introduced to establish the main charge, until, finally, when the evidence was all in, defendant, by his counsel stated in open court to the jury that he was either guilty of the higher offense, or of no offense, and that he desired the jury to so find. This declaration was not only a waiver of any former jeopardy, but was an absolute repudiation of any such claim.