The State of Iowa v. Nash.

## THE STATE OF IOWA v. NASH.

1. EVIDENCE: ADMISSIBILITY OF DECLARATIONS. In the trial of an issue on an indictment for murder, the State offered the declarations of the deceased before death, made in the presence of the accused, without first laying the foundation for their admission as dying declarations. It was held that they were admissible for the purpose of showing the conduct and demeanor of the defendant when accused by the deceased.

2. ADMISSIBILITY OF EVIDENCE. Where on trial it was shown that two persons were engaged in the murder, and the prosecutor offered evidence relating to certain clothing worn by the one not on trial, for the purpose of connecting it with other evidence, which he proposed to introduce connecting that defendant with the one on trial in the commission of the offense, it was held that the evidence was properly admitted.

3. WHO MAY COMPLAIN OF ERROR. An appellant can not complain of the erroneous admission of evidence which he offered.

4. EVIDENCE: CO-DEFENDANTS. The Common Law rule that one defendant in an indictment can not be called as a witness for his co-defendant on a separate trial, unless acquitted, or convicted and not rendered infamous, is repealed by the provisions of article 1, section 4, of the constitution of 1857, and section 2388 of the Code of 1857. [Overruling The State of Iowa v. Nash, 7 Iowa 347.]

5. CODE CONSTRUED. Section 2994 of the Code of 1851 cited and construed in connection with section 2983.

6. WIFE'S TESTIMONY. Where in the trial of the issue joined on an indictment, the wife of the defendant was introduced as a witness for him, and the court instructed the jury that her "peculiar relationship to her husband is such that the jury should examine and consider her testimony with care and caution, and give it such credit as, under the circumstances, they think it entitled." it was held that the instruction was not erroneous.

### Appeal from Lee District Court.

SATURDAY, DECEMBER 10.

THE defendant was indicted jointly with one Redout, for the murder of Thomas A. Harrison, by shooting on the 2d of April, 1858. He was tried separately and convicted, and now appeals to this court upon several questions of law,

which, with the necessary facts connected, appear in the opinion of the court.

*John W. Rankin*, in an oral argument for the appellant, presented the several points relating to the rulings of the court below on the evidence and instructions, as stated in the opinion of the court, and cited authorities of which no memoranda has been preserved.

*Samuel F. Miller*, also for the appellant, submitted to the court a written argument in which the following propositions were discussed:

1. The court erred in refusing to admit the evidence of Daniel Redout, a co-defendant in the indictment.

2. The court erred in refusing to call the names of the nine regular jurors who were dismissed by the court, for alleged disobedience in the trial of a civil action, and in refusing an attachment for them.

In the argument on the first point he referred to, and commented on, chapter 130 of the Code of 1851, and article 1, section 4 of the constitution of 1857, and cited 10 Pick. 58, 10 John. 95, 10 Gratt. 716, 2 Gray (Mass.) 562, 15 Mo. 60 : in support of the second point, section 2965 of the Code of 1851.

*S. A. Rice*, Attorney General, for the State, to the point that the declarations of the deceased in the presence of the defendant were admissible for the purpose of showing his conduct and demeanor when accused of the offense, cited 1 Greenl. Ev. sections 195 and 210; *The State of Iowa* v. *Hinkle*, 6 Iowa 380 : to the point that the evidence of Redout, a co-defendant was inadmissible, cited the Code of 1851, sections 4992–4; *The State* v. *Smith*, 2 Iredell L. R. 402 ; 10 John. 94; 19 Wend.; *Pullen* v. *The People*, 1 Doug. (Mich.) 48; *Commonwealth* v. *March*, 10 Pick 57; 5 Esp. 155 ; 10 Gratt. 708; 4 Bibb 208 ; 2 Starkie Ev. 1062.

WOODWARD, J.—The third assignment of error is to the

The State of Iowa v. Nash.

admission of Harrison's declarations made in the presence of Nash, and the replies of the latter. Harrison was shot on the 2d of April, and on the 4th, Nash was brought into his presence, in company with others, to ascertain whether Harrison could recognize the person who shot him. Harrison pointed him out, and said to him that he was the man. Nash answered that he (H.) was mistaken, and Harrison replied that he was not mistaken. At this period of the case there had been no evidence to support these assertions of Harrison as dying declarations, but the evidence was admitted to show the conduct and demeanor of the defendant when accused by the deceased. We omit any remarks upon the value of such evidence, or upon the delicate duty of the jury in discriminating when applying the testimony, and say only that we know of no rule or principle which forbids such evidence going to the jury. It is admissible, leaving its weight to them. The practice is common of showing what an accused said or did, or what manifestations of feeling or passion he exhibited when arrested, or when charged with the crime. The weight of such proofs may be slight, but this is left to the judgment of the jury; we have to do with its admissibility only. In the present case the testimony was not offered nor admitted as evidence of *declarations* having force in themselves, like dying declarations, but as evidence of circumstances drawing forth and indicating the conduct of the defendant.

Fourth assignment. Neither can we perceive that there was error in allowing the evidence in relation to Redout's dress. Although no testimony had yet been offered to connect him with Nash, the bill of exception states that there was evidence tending to show that two persons were present when Harrison was shot, and that the prosecutor proposed to follow this with other evidence connecting Redout with the transaction.

The seventh and eighth assignments are to the admission of the testimony of Gray and Leach. That of Gray purports to be taken from a newspaper report of his testimony on

a former hearing. This would, of course, be inadmissible, unless by consent; but the bill of exceptions represents it as offered by the defendant, and he therefore cannot object to it.

A part of the testimony of Leach is like that referred to above under the third assignment, in which Harrison is said to charge Nash with the crime, and the latter to deny it. We must presume this to have been admitted upon the same ground with that above, not as declarations of Harrison having force in themselves, but as circumstances leading to, and showing the conduct of Nash from which an inference might be made as to his guilt.

But the testimony of Leach contains other matters of a different nature, such as his talk with Harrison concerning the transaction, Harrison's statement of the circumstances, and his description of the person, and the like, which were not introduced as dying declarations, nor as things or facts transpiring in the presence of Nash. What the witness did as an officer, or what he saw, is well enough, but the whole is mingled with what Harrison said, without either of the above named chains of circumstances which render this admissible. That portion of Leach's testimony, which is here referred to, was inadmissible.

The fifth assignment is to admission of the dying declaration of Harrison. The objection is, that they were not entitled to that character, as not being made under the apprehension of approaching death. Upon an examination of the testimony, we are of the opinion that a proper basis was laid, and that the testimony of the witnesses supports the belief that the declarations were made under a proper conviction of the certainty of dissolution. The circumstances tending to lessen confidence in them are for the consideration of the jury.

This subject of the dying declarations, and the question of its conflict with certain provisions of the constitution, with some other of the points above named, were so fully considered in the former opinion of the court in this case (7th Iowa

350) that it is not deemed necessary to enlarge upon them at this time.

Ninth. Upon the trial the defendant, being tried separately, offered Redout as a witness to prove various facts and circumstances tending to show that Nash was not connected with the offense which had been committed. Objections being made the court ruled that he could not be introduced.

This question also was presented at the former hearing of the cause, but as the case was determined upon other grounds, and the judgment reversed, the question did not receive a full examination. And again, it was not so fully argued at that time, and one ground of the argument now presented, namely, that drawn from the constitution of 1857, was not brought to our observation. And it is proper to remark further, that one member of the court being necessarily absent, took no part in the former decision. Under these circumstances we shall regard the question as *res integre*.

In the common law authorities it has generally been stated to be the law, that one defendant in an indictment can not be called as a witness by his co-defendant, unless acquitted, or convicted but not rendered infamous, and this even though they are tried separately. Several such decisions are cited in this case, 7 Iowa 383. The ground for the rule is variously stated to be, that he is a party to the record, public policy, or interest. It is not very easy to perceive how his interest is made out, at least when there are separate trials. And none of these reasons seem to possess an overbearing weight when we recollect that either may be made a witness for the other if they are indicted separately. But it is not intended to contest the rule above named, nor even to discuss it. Admitting its existence as a common law rule, the question is, whether it has been changed by the law of this State. To some minds it has appeared that the objection to such a witness, upon whatever ground it be placed, is one which should go to his credibility rather than

to his competency. And even the common law authorities are not *all* one way, for a contrary rule has been held in two of the States, where it is said that an accomplice is a competent witness, and may be examined, if he is willing, for his co-defendant in the same indictment, if tried separately, or if he has pleaded guilty, or been separately convicted, and judgment has not yet been rendered. And the same is true, though judgment has been entered, if it has not rendered him infamous. Whart. Crim. Law. 368; *Moffett* v. *The State*, 2 Humph. 99; and see *U. S.* v. *Henry*, 4 Wash. C. C. R. 228; *Garret* v. *The State*, 6 Mo. 1; and see *Blannerhasset* v. *The State*, 1 Walker 7 (Miss).

But, upon a careful consideration of the subject, we are of the opinion that the rule of the common law has been changed by the law of this State. This opinion is based partly upon chapter 130, section 2388 of the Code, and partly upon article 1, section 4, of the constitution. Section 2388 of the Code, enacts that every human being of sufficient capacity to understand the obligation of an oath, is a competent witness in all cases, both civil and criminal, except as herein otherwise declared. It is true that the commissioners who reported the Code intended, as is shown by the original report, a much wider change of the law than is effected by it, and that their intention was restricted by the adoption of the last clause of the above section, and of section 2390, as well as by other exceptions contained in that chapter, but yet the section first mentioned (2388) gives a general rule rendering competent all persons of sufficient understanding, except as therein otherwise declared. And what exceptions are so declared? They are those of Indians and colored persons; of persons having a direct, certain, and legal interest in the suit; of the husband and wife; of cases of professional confidence, and of public officers. If section 2388 of the Code is to receive any consideration, here is a very considerable modification of the law.

According to this provision, all persons of the requisite degree of understanding are competent, unless they fall within

The State of Iowa v. Nash.

some of the exceptions. Under which of these does the witness now offered, come ? There is none of them under which there is any pretense of classing him, unless it be with those having an interest in the suit. It seems to us more appropriate to think the common law ground of exclusion to be that of public policy, for that which is sometimes styled "interest," is more like the interest of a parent, or brother, or son—that is, a sympathy, or an earnest desire to see the accused set at liberty. But if it be properly called an interest, then it is direct, certain and legal. Though he may hope or expect that his testimony may free the accused and thus allow the latter to testify for him, it does not appear that this promised result is certain in its effect, nor can it be called a legal interest.

And again, it is an interest *in the suit*, which is to disqualify. The witness hopes to derive a benefit from the testimony of his fellow. This promises him no benefit from the verdict, nor from the judgment. He cannot use the one or the other in his favor, nor can either of them be used against him. We do not think that the witness, in any fair sense falls within this or any other of the exceptions. See *Fanning* v. *Cutter*, 2 Iowa 582.

The Code clearly contemplates that witnesses were then rendered admissible who had before that been held incompetent; for section 2389 in connection with this same subject, enacts that " facts which have heretofore caused the exclusion of testimony, may still be shown for the purpose of lessening its credibility." This provision is precisely adapted to the case before us, and seems to have been intended for such an one. The fact of the witness' complicity heretofore, excluded him, and now it is to be considered with reference to his credibility. It is to be taken into view, and the jury is to weigh it.

The sections 2983 and 2994 have been referred to us, indicating a view of the legislature in opposition to that now taken, but a satisfactory object for these sections is found in cases where the defendants do not call for separate trials.

In such cases these sections enable either the prosecution or one defendant to obtain the testimony of another defendant under certain circumstances. And it is to be observed that the view above expressed relates to a case of separate trials, leaving the question of their application to cases of joint trials untouched.

In arriving at the conclusion that the accomplice is a competent witness for his co-defendant, a part of the court rests upon the constitution, article 1, section 4, as well as upon the Code as above cited. This section, after enacting that no religious test shall be required for any office, and that no one shall be disqualified for any office or duty, by reason of his opinions on the subject of religion, provides that "any party to any judicial proceeding shall have the right to use as a witness, or take the testimony of, any other person, not disqualified on account of interest, who may be cognizant of any fact material to the case."

The writer is inclined to regard this provision of the constitution as applicable to classes and not to particulars—as a rule of qualification or competency, and not as a rule of evidence to be applied in the detail, and covering and negativing the exceptions to competency heretofore existing. But the majority of the court, regarding the broadness and unqualifiedness of the language above quoted from the constitution, find it difficult to avoid the conclusion that it was intended to reach individuals as well as classes, and that it reaches such an exception to the rule of competency as that under consideration.

In the thirteenth assignment exception is taken to the instruction concerning the testimony of defendant's wife, who was introduced as a witness. The court said to the jury "that under our law she is made a competent witness for her husband, but her peculiar relationship to her husband is such that the jury should examine and consider her testimony with care and caution, and give it such credit as, under the circumstances, they think it entitled to." This instruction is

quite different from those in the cases of *The State* v. *Rankin*, 8 Iowa 355 ; and *The State* v. *Guyer*, 6 Iowa 263.

In those cases the jury were told to look upon the wife's testimony with *peculiar* caution, and the instructions tended to discredit her and to subject her to suspicion; and in the last case it seemed in the view of this court, to require a corroboration of her testimony. In the present case the instruction does not appear liable to these objections. The court says no more than is true in regard to every witness, or at least, of those having close kindred with the accused, such as a father, son, brother, and the like, the difference, if any, being of degree only. And this may suggest a doubt of the utility of such instructions, which doubt however, is not for our consideration.

In consideration of the views taken above, it becomes unimportant to consider some instructions given, and some remarks made by the court, to which exceptions were taken and upon which errors are assigned.

The judgment of the District Court is reversed, and the cause is remanded for trial *de novo*.