STATE OF IOWA, Appellee, v. EDWARD DENNIS, Appellant.

**Murder:** DYING DECLARATIONS: ADMISSIBILITY OF: EVIDENCE.   A
1   dying declaration in writing, to be admissible in evidence,
    must have been made and signed under the solemn belief of
    impending death, and its admissibility should be determined
    by the court from all the facts and circumstances.   Facts con-
    sidered, and held that the declaration was properly admissible.

**Same:** WAIVER OF OBJECTION.   Where the court on objection
2   offered to exclude certain portions of a dying declaration and
    defendant insisted that if any part was read he wanted it all
    read, any objection thereto was waived.

**Statements And Acts of Co-Defendant:** WHEN ADMISSIBLE.   De-
3   fendant and another employe, with whom he was jointly in-
    dicted, were discharged and one D put in their place.   There
    was evidence that during a quarrel with the foreman defend-
    ant had said he was going to whip the man put in his place
    for running him out of a job; also that defendant and the
    other discharged employe lingered about the place where de-
    ceased was assaulted until late in the evening.   *Held*, that
    evidence that the other employe had made similar threats was
    admissible to support the theory of the state that defendant and
    his associate had conspired together to make an assault upon D.

**Conduct of Defendant:** IDENTIFICATION OF ASSAILANTS: EVIDENCE.
4   Evidence of the conduct of defendant when in the presence of
    his victim, together with what was said by the latter, is com-
    petent, and where defendant and his co-conspirator testify that
    the party assaulted did not identify them as his assailants, and

generally as to what was said and done by him, it is competent
for the state on rebuttal to show by other witnesses what was
there said and done by the assaulted party.

Evidence.    The whole evidence in the case considered and summar-
ized in the opinion and held to support the ·verdict of murder
in the second degree.

Malice: PREMEDITATION: EVIDENCE.    Evidence on the question of
malice and premeditation held sufficient to warrant submitting
to the jury the question of murder in the first  degree.

*Appeal from Page District Court.*—HON. A. B. THORNELL,
Judge.

WEDNESDAY, APRIL 8, 1903.

THE indictment charges the defendant, jointly with
Eugene Mason and Wesley Irwin, with the crime of murder
in the first degree.    This defendant demanded, and was
given, a separate trial.    There was a verdict of guilty of
murder in the second degree, upon which judgment was
entered imposing a term in the penitentiary.    The defend-
ant appeals.—*Affirmed.*

*W. P. Ferguson* and *G. I. Miller* for appellant.

*Charles W. Mullan*, Attorney General, and *C. A. Van
Vleck*, Assistant Attorney General, for the State.

BISHOP, C. J.—On the night of December 18, 1901, an
alleged tramp, named Oscar Miller, was struck several
blows upon the head by some blunt instrument, from the
effects of which he died on January 2, 1902.    The·crime
was committed in a small house, used for storing sand,
situated near the Wabash Railroad station in Shenandoah,
Page county.    Upon the trial the state was allowed to
introduce, over the objection of defendant, what pur-
ported to be a dying declaration signed by Miller on
December 28, 1901.    It is now urged that the admission
of such declaration in evidence was error.

The particular objection made to the introduction of the declaration as a whole is that it does not appear that the same was made and signed under the solemn belief of impending death. It is well settled that, to be admissible as a dying declaration, it must appear that the proffered statement was made at a time when declarant was in fact *in extremis* and that it was so made by him under the belief that he was about to die. ` State v. Clemons*, 51 Iowa, 274; *State v. Perigo*, 80 Iowa, 41; *State v. Wright* 112 Iowa, 436. The question of the admissibility of the statement is, of course, one for the court, and should be determined from all the facts and circumstances appearing in the case. The court is not limited in its inquiry to what was said by the declarant upon the subject, but the fact may be proved like any other fact in the case. *State v. Nash*, 7 Iowa, 347; *State v. Schmidt*, 73 Iowa, 469; *State v. Baldwin*, 79 Iowa, 719; *People v. Simpson*, 48 Mich. 477 (12 N. W. Rep. 662); *Com. v. Matthews*, 89 Ky. 292 (12 S. W. Rep. 333); *Mattox v. U. S.*, 146 U. S. 151 (13 Sup. Ct. Rep. 50, 36 L. Ed. 917). In the case last cited it is said that a belief in impending death "may be made to appear from what the injured person said, or from the nature and extent of the wounds inflicted, being obviously such that he must have felt or known that he could not survive, as well as from his conduct at the time, and the communications, if any, made to him by his medical advisers, if assented to or understandingly acquiesced in by him."

*G dec-larations: admissibility of: evidence.*

Having before us the rule of law governing the subject-matter, we now turn to the record to ascertain the facts upon which the ruling complained of was based. When found on the morning of December 19th, Miller was lying in the open door of the sandhouse. He was unconscious, and remained so for several days thereafter. He steadily grew weaker down to the time of his death. He was advised by his physician concerning the character of

his injuries, and that his chances for recovery were very slim.   The physician from time to time tried to encourage him in the hope of getting well, but it is evident that he knew he was steadily growing weaker.  · He stated upon several occasions that he knew he had but a slight chance, and, on the evening the declaration was made and signed, he said to the physician, "I do not think I can get well." This was said in response to a statement to him by the physician that the probability was that he could not get well.   Thereupon the physician told him that parties had been arrested on the charge of assaulting him, and that unless he made a statement there would be no evidence after his death to establish their guilt.   He expressed a willingness to make the statement, and it was then prepared, and read over and signed by him.   Such being the evidence, we think it cannot be doubted that Miller was conscious that he was soon to die,, and that such was the belief of his physician.   It follows that there was no error in admitting the declaration in evidence.

Counsel for appellant insist, however, that a certain portion of the declaration should not have been admitted, for that it was merely statement of an opinion, and not a statement of fact.   It is a sufficient answer to this contention to say that it appears from the record that, when it was proposed to read the declaration in evidence, the court offered to exclude certain portions thereof, whereupon counsel for defendant replied, in substance, that, if any of the statement was to be read, they wanted it all read.   The entire statement was then read to the jury.   In view of the record, the present contention cannot be considered.

2. SAME: waiver of objection.

II.   Up to December 18, 1901, the defendant and Mason, jointly indicted with him, were employed as night men at the Wabash station coal sheds.   On the evening of that day they were discharged by the yard foreman, and one Davis was put at work in their place.   Defendants

lingered about the station, and there is evidence tending
3. STATEMENTS to show that they had a wordy quarrel with
and acts of
codefendant: the foreman, during which this defendant de-
when admis-
sible.  .   clared that Davis had run him out of his job,
and that he was going to whip Davis or somebody before
he went home, on account thereof.   The witnesses were
permitted to testify that Mason had a part in the word
quarrel, and that he also made threats similar to those
said to have been made by this defendant.   It is now
urged that the admission of the evidence concerning the
threats made by Mason was error.   With this contention
we do not agree, and the reason therefor is readily found
in the situation.   Dennis and Mason had been discharged
and both were angry because of such fact.   Not only does
this appear in evidence, but there is evidence to the effect
that they loitered about the station and sandhouse until
late in the evening.   It is evident from a reading of the
record that the case of the state was presented upon the
theory that this defendant and his associates had conspired
together to make an assault upon Davis.   Such theory is
not without support in the evidence, and the state was
fairly entitled to present it to the jury.   In this view, and
giving consideration to the fact that Dennis and Mason
were together and each taking part in the quarrel at the
time the threats are said to have been made, we think the
evidence was admissible.

III.   The  state offered and introduced evidence in
chief to the effect that, just preceding the making of the
dying declaration, the defendant, with Mason and Irwin,
4. CONDUCT of was brought into the presence of Miller for
defendant:
identification the purpose of identification.   It is com-
of assailant:
evidence.    plained of in this connection that one of the
witnesses was permitted to testify to the demeanor of
defendant upon being brought into the room.   In this
there was no error.   It is competent to prove the conduct
of a defendant when confronted with a charge of crime.

*State v. Gillick,* 7 Iowa, 287; *State v. Nash,* 10 Iowa, 81.
Such was the effect of what is here shown to have occurred.
The defendant was brought before the wounded man to be
either accused or exonerated.    This the defendant under-
stood, and his conduct under the circumstances, together
with what was said by the wounded man in his presence
and hearing, was proper to be put in evidence, to be given
such weight and consideration against him, or in his favor,
as the jury might determine.    The evidence thus intro-
duced by the state was confined to the matter of the con-
duct of defendant, and his identification by Miller as one
of the persons committing the assault.    To meet this
evidence, defendant and Mason, as witnesses for the
defense, testified, in substance, that Miller did not reco-
gnize them or identify them as his assailants.    They also
testified generally in respect of what was said and done by
Miller at the time.    The state, in turn, called to the stand
the several persons who were present upon the occasion
in question, and they were permitted to give their version
concerning all that was said and done by Miller.    This
was over the objection of defendant that such was not
rebuttal evidence.    We think it can fairly be said that the
evidence was made necessary by the defendant, and as
such it was properly admitted.

IV.    Counsel for appellant earnestly insist that the
evidence produced upon the trial was insufficient to support
the verdict found by the jury, and that accordingly the
judgment should be reversed.    We have care-
fully read the entire record, and therefrom
reach the opposite conclusion.    A brief synopsis of the
facts which the jury was warranted in finding had been
fairly established will be sufficient to demonstrate the
correctness of our conclusion, and we make the following
statement thereof:    Both Dennis and Mason were much
angered because of their dismissal from the employ of the
railroad company, and this feeling centered upon Davis,

5.  EVIDENCE.

who was employed in their place. Both made threats as against Davis during the early part of the evening. Such threats coming to the ears of Davis, he was on the lookout for them, and took pains to keep out of their way. Dennis and Mason, reenforced by Irwin, lurked about the station buildings until a late hour; being seen principally at or in the vicinity of the sandhouse. The building thus designated is a small structure situated near the railroad track, and between the station house proper and the coal sheds. It was used for the purpose of drying and storing sand intended for use on locomotive engines. In a way, it was divided into two rooms, in one of which was a large stove, and in the other a quantity of sand. There had been fire in the stove during the day, and this was replenished by the yard foreman about eight o'clock in the evening, as he was on his way home. After nightfall the interior of the building was dark, save for what light came through the broken door of the stove. Late in the evening, Miller, who, it appears, was a wanderer, came to the sandhouse, entered it, and, passing around behind the stove, sat or lay down upon the warm sand. He says in his declaration that in a short time three persons whom he identifies as Dennis, Mason, and Irwin, entered the door. One of them had a piece of gas pipe in his hand, and another had a poker. He further says that, as they entered the stoveroom, he got up. Nothing was said by any one, and he knew nothing of what afterwards happened. When found in the morning, his skull was fractured; such having been accomplished by heavy blows from a blunt instrument. Upon the floor was a pail containing bloody water, and blood was in the sand scattered about the upon floor. When Dennis came to the station, he had on his overalls and a working jacket. No trace of such was found subsequent to his arrest the next day. There is also evidence on the the part of a cobbler who says that the next day Dennis came to him to have a new sole put on his shoe; that in

the sole of the shoe, as handed to him for repair, there was a hole worn through; and that therein he found sand discolored by blood.    During the forenoon of the next day, Dennis and his associates were again about the station; the former appearing to be nervous and restless. Mason, without being accused, as far as appears from the evidence, demanded who it was that was saying they had committed the assault upon Miller.

Such, in brief, are the facts, in addition to those we have already stated, which the jury was warranted in finding had been established.    As we have said in another division of this opinion, it was the theory of the state that Dennis and his associates had resolved upon and conspired together to make an assault upon Davis; that they evidently believed he would go to the sandhouse during the night for some purpose—possibly to replenish the fire—and that being there they would follow him in, and act upon their resolve; that, seeing Miller enter, and supposing him to be Davis, they proceeded to carry out their plan, which resulted in the death of Miller.    The jury, having found the facts to be as stated, accepted the theory advanced by counsel for the state, and came in with a verdict of murder in the second degree.    Such being the state of the record before us, we reach without difficulty the conclusion that the verdict was warranted by the evidence, and should not, therefore, be disturbed.    That the intended victim was a person other than the deceased is, of course, immaterial.    If the purpose and plan was to injure or kill some one, it matters not that a mistake was made in the identity of the person actually assaulted. This is elementary.

In this connection we may dispose of the only remaining question of error contended for by counsel for defendant.    At the close of the evidence, defendant moved the

6. MALICE: pre-  court to take from the jury the question of
meditation:
evidence.    murder in the first degree, and this motion

was overruled.   Such ruling is now presented to our attention as constituting error.   Counsel urge that the evidence did not warrant a finding of premeditation and deliberation, and therefore the offense côuld in no event be murder in the first degree.   We are unable to thus read the record.   In our view, a finding that the defendant and his associates were about the sandhouse near the middle of an intensely cold night, armed with weapons easily capable of producing death, and that they followed their victim into the sandhouse, and, without warning of any kind, dealt upon his head the blows that produced his death, may easily be said to support the conclusion that such was done with malice, and was premeditated and deliberate.

We have carefully read the entire record, and we find no error.   The judgment is therefore AFFIRMED.