## DIAMOND *v.* STATE OF INDIANA.

[No. 24,467.   Filed June 24, 1924.   Rehearing denied October 31, 1924.]

1.   CRIMINAL LAW.—*Trial.—Instructions.—Reasonable Doubt.—* An instruction is properly refused which instructs the jury that if there remains a reasonable doubt in their minds as to which one of two or more persons committed a homicide, having the same opportunity to commit the offense, when the jury was elsewhere fully instructed as to reasonable doubt, that the doubt might arise from evidence or want of evidence, burden of proof, that the burden never shifts to the defendant, and the necessity of reconciling the evidence upon any reasonable hypothesis of innocence.   p. 288.

2. CRIMINAL LAW.—*Instructions.—Each Item of Evidence Need Not be Covered.*—When the instructions correctly cover the whole case it is not required that each item of evidence be covered separately. p. 289.

3. CRIMINAL LAW.—*Evidence.—Statements by Deceased in Presence of Accused.—Under Arrest.*—After a statement made by the deceased in the presence of her husband and of several witnesses including a police officer, that her husband had shot her, the officer placed him under arrest and put him on a chair within four feet of his wife; she thereafter reiterated her statement that he had shot her, to which he only replied by momentarily simulating a fit; *held,* that the mere fact that defendant was under arrest would not of itself bar such testimony by the police officer. p. 290.

4. CRIMINAL LAW.—*Evidence.—Admissions of Defendant by Silence in the Face of Accusation.*—Where a charge is made in the presence and hearing of a person accusing him of a crime, his silence or failure to contradict or explain the statement may be shown, as being in the nature of an admission of the truth of such statements, providing the circumstances afford an opportunity to speak and would naturally call for action or reply. p. 291.

5. CRIMINAL LAW.—*Evidence.—Homicide.—Behavior of Accused in Presence of Deceased.*—Several witnesses testified to statements made by the deceased within twenty or thirty minutes after being shot by her husband, accusing him of shooting her; some of these statements he inferentially denied, to some he made conflicting and false statements, *held* such evidence was admissible, regardless of whether it was a part of the *res gestae,* as showing the whole conduct of the accused soon after the crime was committed, and tending to show consciousness of guilt. p. 292.

6. CRIMINAL LAW.—*Evidence.—Homicide.—Statements of Deceased Accusing Defendant.*—If statements by deceased within less than half an hour after she had been shot, accusing her husband in his presence, were consistently denied by him, unaccompanied by any implicative act, they would not be admissible, but when such statements receive conflicting responses they are properly admitted, and their weight is a question for the jury. p. 294.

7. CRIMINAL LAW. — *Evidence. — Homicide. — Competency of Statements of Deceased.*—Statements by deceased a few minutes after she was shot, accusing her husband of the shooting in his presence, to which he made conflicting responses, were not evidence of the truth of the facts stated, but were only competent to explain and account for appellant's conduct and statements. p. 295.

Diamond v. State—195 Ind. 285.

8. CRIMINAL LAW.—*Evidence.—Materiality.*—After proof by the state in a prosecution for homicide, that the accused had procured a colored boy to write a letter which would tend to implicate him in the murder, there was no prejudice to the defendant in permitting the state to prove that this letter was found the next day near the scene of the shooting. p. 297.

9. CRIMINAL LAW.—*Evidence.—Exclusion of Incompetent Evidence Sustained on any Ground.*—In a prosecution for the murder of a wife by her husband the defendant introduced an inventory of his wife's estate showing stocks as of no value, and the executor was asked to testify as to the contents of such written instruments; *held,* although the state did not object to this evidence on the ground that it was secondary evidence, yet its exclusion will be sustained. p. 297.

10. HOMICIDE.—*Evidence.—Materiality.*—In a prosecution for the murder of a wife by her husband, evidence of an inventory of the wife's property, introduced to show that her stocks were purchased before marriage and that many of them were worthless, is immaterial on the question of motive. p. 297.

11. CRIMINAL LAW.—*Pardon.—Power Rests with Governor.*— The Supreme Court has power to stay the execution of a capital sentence for such time as is necessary to examine and decide questions presented by the record on appeal, but in view of the division of powers of government contained in the Indiana Constitution, Art. 3, §96 Burns 1914, and the authority of the Governor to grant reprieves, commutations and pardons after conviction by Constitution Art. 5, §17, §143 Burns 1914, the Court has no power to determine the question of sanity of a defendant after judgment and sentence to death. p. 299.

12. COURTS.—*Determination of Sanity of Defendant After Conviction, Judgment and Sentence.*—The Courts of the state are not authorized, either by ch. 103 Acts 1905 p. 174 (§§2177-2180 Burns 1914), or §2071d Burns 1914 (§6 ch. 298, Acts 1913 p. 775) to impanel a jury to determine the sanity of a defendant after verdict, judgment and sentence. p. 300.

13. CRIMINAL LAW.—*Reprieve.—Insanity After Sentence of Death.*—Statutes (§§3478, 3479 Burns 1914), which provide a method for bringing the insanity of a convicted person to the Governor's attention are not exclusive, and a petition for reprieve may be presented to him otherwise than as outlined by statute. p. 301.

From Porter Circuit Court; *H. H. Loring,* Judge.

Harry Diamond was convicted of murder in the first degree, and he appeals. *Affirmed.*

*McMahon & Conroy* and *William H. Mathews*, for appellant.

*U. S. Lesh*, Attorney-General, *Mrs. Edward Franklin White*, Deputy Attorney-General, and *W. J. McAleer*, for the State.

GAUSE, J.—Appellant was charged by indictment with the murder of his wife, Nettie Diamond. Upon a trial by a jury he was convicted of murder in the first degree and, in accordance with the verdict of the jury, he was sentenced to death.

Appellant has assigned as error in this court the overruling of his motion for a new trial, which contained the various assignments we shall hereafter discuss.

The first proposition advanced by appellant is that the court below erred in refusing to give to the jury the following instruction requested by appellant:

1.    "The jury are instructed that when two or more persons had the same opportunity to commit the offense charged, and if upon the whole evidence in the case, there remains in your mind a reasonable doubt as to which one of the two or more persons committed it, then neither can be convicted."

Of course the State had to prove beyond a reasonable doubt that appellant committed the crime charged, to obtain a conviction, and this is the purport of the charge requested. If the jury had a reasonable doubt upon the whole evidence in regard to this fact they would not be justified in convicting appellant. If there was a doubt as to whether some other person was the one who committed the crime, then the appellant's guilt would not be proved beyond a reasonable doubt.

The requested instruction is not complete as an abstract proposition of law, as it ignores the fact that although some other person may have committed the crime, yet the defendant would be guilty if he aided and abetted or procured it to be committed. However, in

this case, where there is no element of procuring or aiding by appellant, the tendered instruction would be proper if no other instruction embodying the same principle had been given.

It appears from the record that the court instructed the jury very fully upon the question of reasonable doubt and as favorably as appellant could ask. A reasonable doubt was defined by an instruction which has been repeatedly approved by this court and the jury was told that the burden rested upon the State to prove beyond a reasonable doubt every material allegation of the indictment, before there could be a conviction.

They were told that if they could reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, they should do so. That the State was required to prove every essential element of the offense charged beyond a reasonable doubt and that such doubt might arise either from the evidence or from the want of evidence, and that the burden of proof never shifts to the defendant.

In view of the instructions given, it is apparent that the jury would understand, as clearly as the English language could state it to them, that if they had a reasonable doubt as to whether the appellant committed the crime charged they should acquit him, whether this doubt arose because some one else may have been the guilty party, or for any other reason. When the 2. instructions correctly cover the whole case it is not required that each item of evidence be covered separately. *Koerner* v. *State* (1884), 98 Ind. 7.

The substance of the requested instruction was fully covered by the other instructions given and the court did not err in refusing it.

It appears from the evidence that appellant and his wife were riding in a sedan on their way from Gary,

Indiana, to East Chicago, at the time it is claimed appellant shot his wife. The car was being driven by a colored boy named Armstrong.

It is the theory of the State, supported by the direct testimony of the colored boy and a signed dying declaration of Mrs. Diamond, that while on this trip appellant asked the colored boy to get out of the machine to look and see if one of the skid chains on the back wheel of the automobile had come off, and while the boy was back of the machine, appellant shot his wife and then shot the boy in the head; that appellant then beat his wife on the head with the gun; that the colored boy was able to run away from the machine, and that appellant then drove the machine, with his wife in it, to East Chicago, a distance of two or three miles, and there carried his wife into a drug store which was located in a building owned by her; that during this time and while Mrs. Diamond was in the drug store, she was suffering greatly but was conscious.

While they were in the drug store a number of persons, including certain police officers, came in and Mrs. Diamond made a statement in the presence of her husband that he had shot her. One of said police officers was Hiram Kerr and he testified that after Mrs. Diamond made this statement he placed appellant under arrest and put him on a chair about four feet from Mrs. Diamond. This police officer then testified in substance that while appellant was sitting within this distance of Mrs. Diamond, she said, "Harry, why did you shoot me? Why did you beat me over the head with a gun?" and that she repeated that a couple of times, and that the only reply appellant made to these charges was to say, "I got a fit," and he slid off his chair onto the floor, but that the officer pulled him back onto the chair and that he did not have a fit.

Appellant contends that this testimony of the

officer was not competent for the reason that at such time the appellant was under arrest.

We do not think that the mere fact that appellant was under arrest at the time makes such evidence incompetent.

Where a charge is made in the presence and hearing of a person accusing him of a crime his silence, or failure to contradict or explain the statement,

4. may be shown, as being in the nature of an admission of the truth of such statements, providing the circumstances are such as to afford him an opportunity to speak and such as would naturally call for some action or reply from persons similarly situated.

If the charge is made under circumstances where he would not be expected to reply, such as during a judicial hearing, or where he could not speak with propriety, the failure to reply is not admissible.

Not only is it competent to show that he remained silent when accused, if he was free to speak and would naturally be expected to speak, but his actions when charged are admissible, as is also the fact that he gives a false explanation. *Raymond* v. *State* (1908), 154 Ala. 1, 45 So. 895; *People* v. *Amaya* (1901), 134 Cal. 531, 66 Pac. 794; *State* v. *Pratt* (1866), 20 Iowa 267; *State* v. *Booker* (1909), 68 W. Va. 8, 69 S. E. 295; *People* v. *Swaile* (1909), 12 Cal. App. 192, 107 Pac. 134; *Commonwealth* v. *Brown* (1876), 121 Mass. 69; note to 25 L. R. A. (N. S.) 542; Underhill, Crim. Evidence, §117; *State* v. *Nash* (1859), 10 Iowa 81; *Simmons* v. *State* (1913), 7 Ala. App. 107, 61 So. 466; *Morrison* v. *State* (1916), 125 Ark. 402, 188 S. W. 1187; *Murphy* v. *State* (1881), 36 Ohio St. 628.

Although the circumstances may be such that a person under arrest would not be expected to reply, and therefore his silence would not be admissible against

him, yet the mere fact of his being under arrest would not of itself be sufficient to bar the testimony.

Appellant cites the case of *People* v. *Nitti* (1924), 312 Ill. 73, 143 N. E. 448, as sustaining their position with regard to the admissibility of statements made by the deceased in the presence of the appellant and his actions and replies thereto, but in the Nitti case the conviction rested solely upon testimony that appellants had remained silent when charged with the crime, and the court held that such evidence was not sufficient within itself to justify a conviction, and also that as it was not clearly shown that appellants heard all that was said, a sufficient basis was not laid for the introduction of such evidence.

Of course if the charge is not heard or clearly understood it would not be expected that any reply would be made thereto.

We think no error was committed in permitting officer Kerr to detail the statements of deceased and the actions of appellant thereupon.

Appellant next urges that the court erred in permitting James C. Storer, Herschell Cannon, Dr. Townsley and Thomas Kochis to testify as to statements made by Mrs. Diamond, in the drug store soon after she was carried in there by her husband, and in permitting them to describe the actions and give the replies of appellant thereto.

5.

The record supports the contention of the State that all of these statements of Mrs. Diamond were made in appellant's presence.

The witness Storer testified that he was a clerk in said drug store, and that after Mrs. Diamond was brought in he heard appellant say to his wife, "Honey, I didn't mean to do it." And she replied, "You lie," or, "You are a liar," and she further said, "You shot me for my money." That nothing else was said at

that time, but that appellant, "made various circuits around in the room."

The witness Cannon, who was the proprietor of the drug store, testified that while Mrs. Diamond was in the store he heard appellant say to her, "Honey, tell them the negro shot you; don't tell them I shot you," and she said, "You are a dirty liar; you shot me yourself. I can forgive you for shooting me, but I cannot forgive you for beating me over the head with a gun." And she also said at that time, "Harry shot me and also shot the colored boy; he knows it was not the colored boy that shot me. Don't believe that. I am in my right mind. I recently made my will and left him $20,000."

Dr. Townsley testified that he was called to the drug store and that Mrs. Diamond said to the witness, in the presence of appellant, "Dr. Townsley, I am in my right mind, and I know what I am saying, and I want you and everybody to know that my husband shot me;" and that appellant then said to her, "No, honey, I didn't shoot you, the negro shot you," and she said, "No, he did not; you shot me yourself." That he heard no other conversation between them.

The witness Kochis testified that at the time Mrs. Diamond was in the drug store she said to her husband, "Harry Diamond, you killed me, you know you shot me," and he said, "Don't tell the people that, I didn't kill you, I didn't shoot you, tell them the nigger did it," and that appellant bent over his wife and said, "Honey, tell them the nigger killed you, or shot you rather, instead of me," and she said, "No, you know you are a liar, he didn't shoot me."

Appellant insists that the quoted testimony of all the above witnesses was incompetent for the reason that the statements of Mrs. Diamond were not a part of the *res gestae* and that the conversations and acts of appellant were not competent as admissions of guilt.

The record shows that Mrs. Diamond was in the drug store only fifteen or twenty minutes and all of the statements made by Mrs. Diamond and the conduct of appellant as detailed by these four witnesses and Officer Kerr, occurred during this time.

It is true that when a statement is made charging a person with a crime, and he unequivocally denies such charge, the statement is not admissible, but in the case at bar the State was showing his whole conduct, in the presence of the deceased soon after the crime was committed.

Some of her statements were denied, others not denied, and appellant made conflicting statements, such as stating at one time he did not shoot his wife and at another time that he did not mean to do it; that he gave an account of the transaction which the evidence tended to show was false; that he pretended to be seized with a fit; when he in fact was not.

Without discussing or deciding whether any of such statements and acts were admissible as a part of the *res gestae,* as contended by the State, we think they were competent as showing the conduct and statements of the appellant, in the presence of his wife, soon after the commission of the crime, when he was charged therewith, as tending to show consciousness of guilt.

If the whole conversation had consisted of a charge by the wife and a denial thereof by appellant, unaccompanied by any implicative act, her statement 6. would not have been competent, but the statements given by these various witnesses were all made within a space of fifteen or twenty minutes in the same place, and since as to some of the statements he remained silent and as to some he made evasive replies, and one reply that tended to implicate him, it was not improper for all that was said at such time,

both by Mrs. Diamond and appellant, to be admitted, as well as for his actions to be described.

Of course the weight to be given such evidence is for the jury.

The statements made by Mrs. Diamond were not evidence of the truth of the facts stated, but were only competent to explain and account for appellant's

7. conduct and statements. Upon proper request it would have been the duty of the court to instruct the jury regarding the purpose of such testimony.

We find that almost the exact question we are considering was decided in the case of *Commonwealth* v. *Trefethen* (1892), 157 Mass. 180, 31 N. E. 961, 24 L. R. A. 235, where the defendant was charged with murder. In that case the mother of the deceased was allowed to testify to a conversation with the defendant, after the disappearance of deceased, as follows: "I asked him where Tena (deceased) was. He said he hadn't seen her. Says I, 'Don't lie. She went out to meet you last night on the corner of Ferry street, and you have carried her off.' He said he had not. Said I, 'You have.' "

There were other examples of the admission of similar testimony against the objection of the defendant.

It also appears that the Commonwealth introduced a large amount of testimony relating to the conduct of the defendant after the disappearance of the deceased, including statements, declarations, conversations and conduct of the defendant. That when accused of being responsible for the disappearance of deceased he shed tears and was excited and met the charges in various ways, *sometimes by explicit denials, sometimes by silence, and sometimes by equivocal expressions,* such as, "It must be a mistake," "It must be some other party," "It is all a mistake."

The Massachusetts court held that if, when a defend-

ant is charged with a crime, he unequivocally denies it, and this is the whole conversation, it cannot be introduced in evidence, but that if some of his replies are equivocal and tend to show guilt and some are explicit denials of guilt, the whole conversation on that subject is admissible. Upon this subject the court summed up its conclusion as follows:

"Some of the evidence recited was competent on the ground that the conduct or replies of the defendant, in view of the statements made to him, had some tendency to show guilt on his part. If in one conversation some of the replies of the defendant had some tendency to show guilt, and some were explicit denials of guilt, we cannot say that the defendant has been prejudiced by the admission in evidence of all that was said at that interview directly or indirectly relating to his guilt or innocence, if the jury were properly instructed upon the application to be made of this evidence. We cannot presume that the court did not take pains properly to instruct the jury upon the legitimate use to be made of the evidence admitted, and warn the jury that the statements made to the defendant were not to be considered, in and of themselves, as any evidence of the facts stated."

In the case at bar no complaint is made of the absence of instructions limiting the purpose of the evidence, and no such instruction was requested, so that if the evidence was admissible for any purpose the appellant cannot now complain.

We hold that no error was committed in admitting the evidence complained of.

The State proved by the colored boy, Armstrong, that several days before the murder appellant had procured Armstrong to write a letter which would tend to implicate Armstrong and show that he was planning to rob Diamond and his wife.

The court allowed the State to prove that this letter was found near the scene of the shooting on the day following. To this the appellant objected that it related to a transaction subsequent to the shooting, and that there was no showing that the conditions at the place of the shooting had remained the same.

We perceive no error in this evidence.

It was the theory of the State that appellant had procured this letter to be written in order to divert suspicion towards the Armstrong boy and as the evidence tended to show it was written at the direction of appellant, it was competent evidence. It was certainly competent to show where it was found and appellant was not harmed by the showing that it was found the following day near the scene of the shooting.

8.

Appellant's contention was that the boy had the letter, while the State contended he had given it to appellant. The place where it was found did not tend to prove which one had the letter. The evidence was immaterial for any purpose, except to account for the State having it and the appellant was not harmed thereby.

The appellant placed in evidence the inventory and appraisement of Mrs. Diamond's estate, which showed that she was the owner of certain certificates of stock which were appraised as of no value. The executor of her will, as a witness for appellant testified that he had the certificates of such stock in his possession in court. The appellant then asked him to state the dates which said certificates of stock bore and stated that he purposed to show that all of them were dated prior to the date that appellant and Mrs. Diamond were married.

9, 10.

It is apparent that the witness was asked to testify to the contents of written instruments which he then

had in court.   The questions calling for such testimony were clearly objectionable as not calling for the best evidence.

But appellant says that the State did not object to said evidence upon this ground.

The rule is well settled, however, that if offered evidence is properly excluded, the ruling will be sustained, although the grounds of the objection were not proper. In other words, to reverse a cause for the exclusion of evidence it must appear that the evidence was clearly competent.   *Maier* v. *Board, etc.* (1898), 151 Ind. 197; *Whitney* v. *State* (1900), 154 Ind. 573.

Even if proper evidence had been offered to prove the facts stated, we are unable to see how it would have been material.   The appellant says he intended to show, on the question of motive, that he had not been responsible for Mrs. Diamond losing her property, but that she had made bad investments before their marriage.   The fact, if it was a fact, that Mrs. Diamond had purchased worthless stock before their marriage, would not be material.

We have considered all the questions raised in appellant's brief and, finding no reversible error, the judgment is in all things affirmed.

## ON PETITION FOR SANITY INQUEST.

PER CURIAM.—This court affirmed a judgment of the Porter Circuit Court by which appellant was sentenced to death, on June 24, 1924, and afterwards denied his petition for rehearing on October 14, 1924.   In the meantime it had entered an order staying execution of the death sentence until November 14, 1924.   His attorneys have filed a petition supported by affidavits, stating that since the entry of judgment and the imposition of the sentence of death appellant has become and is now insane, and is incapable of realizing that he

is under sentence of death, to be executed on November 14, 1924, unless he shall show cause why execution should not be done at that time, and praying that this court will direct and authorize the circuit court of Porter county to receive and act upon a petition on behalf of appellant, asking that said court, with the aid of a jury shall try and determine the question whether or not he has so become insane.

The powers of the government are divided into three separate departments: the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in the constitution expressly provided. Indiana Constitution, Art. 3, §96 Burns 1914.

The Governor shall have the power to grant reprieves, commutations, and pardons, after conviction, for all offenses except treason and cases of impeachment, subject to such regulations as may be provided by law. §17, Art. 5, Indiana Constitution, §143 Burns 1914. The Supreme Court has power to stay the execution of a capital sentence for such a period of time as is required to give an opportunity to examine and decide the questions presented by the record, on appeal from the judgment imposing such sentence, this being a necessary attribute of the power to hear and decide appeals. *Parker* v. *State* (1893), 135 Ind. 534, 35 N. E. 179.

But except in the exercise of its power to hear appeals and otherwise to review the action of trial courts, the Supreme Court cannot stay the execution of a judgment and it cannot grant reprieves for any purpose, that power belonging exclusively to the Governor.

Counsel for the petitioner cite the case of *People* v. *Geary* (1921), 298 Ill. 236, 131 N. E. 652, in which the Supreme Court of Illinois construed a statute which

provided that if, after judgment and before execution of the sentence, a person convicted of a capital offense should become lunatic or insane, the execution of the sentence of death should be stayed until the recovery of such person from the insanity or lunacy; and that in such a case it should be the duty of the court to impanel a jury to try the question whether the accused be, at the time of the impanelling, insane or lunatic (§13 of Div. 2, par. 285, Ill. Crim. Code, Hurd's Stat. 1917 p. 1016). There is no such statute in the State of Indiana. The one which most nearly resembles it is ch. 103, Acts 1905 p. 174 (§§2177-2180 Burns 1914). But that statute does not give the person found guilty of a capital offense any absolute right to a trial by jury of the question whether he has become insane since the verdict was returned, but only provides "that when the defendant in a criminal case appears for judgment, and the court, either from his own knowledge or upon the suggestion of any person, has reasonable ground for believing the defendant to be insane, the question of his insanity shall be determined by twelve qualified jurors, to be summoned and impanelled as directed by the court," etc. And having made the calling of a jury to depend upon the court having reasonable ground for believing the defendant insane when he appears for judgment, the statute contains no provision whatever, such as is found in the Illinois statute for calling a jury to inquire as to the sanity of the defendant after judgment has been pronounced.

Counsel refer to §2071d Burns 1914 (§6, ch. 298, Acts 1913 p. 775) but that relates to the procedure when the court has reasonable ground to believe that an accused person is insane "before the final submission of the cause to the court or jury trying the same," and not to proceedings after final judgment.

The appeal to this court has been finally disposed of and the court has no further jurisdiction to interfere with the execution of the sentence imposed, as incident to the exercise of appellate jurisdiction. And the statute does not provide for a judicial inquiry by the trial court concerning the sanity of the prisoner after he has appeared for judgment and sentence has been pronounced.

We are not here concerned with an absolute right of Harry Diamond, but with a matter of humanity and public conscience to prevent the execution of a man alleged to be deprived of reason. Under the common law this was committed to the sound discretion of the court, which had power to grant reprieves in proper cases. *Nobles* v. *Georgia* (1897), 168 U. S. 398, 402, 18 Sup. Ct. 87, 42 L. Ed. 515; Chitty, Blackstone, book 4, (star paging) 24, 25, 396.

But by the constitution of Indiana the power to grant reprieves and pardons is vested in the Governor alone. Art. 5, §17, Constitution.

Statutes have been enacted which provide a method for bringing the insanity of a convicted person to the Governor's attention. §§3478, 3479 Burns 1914.

But the procedure prescribed by statute is not exclusive. The qualification expressed by the constitution that the Governor may grant reprieves "subject to such regulations as may be provided by law" does not limit in any degree his power as Governor to act on a petition for a reprieve that may come before him otherwise than in the manner which the statute outlines. Even though there were no such statute or without regard to its provisions a petition for executive clemency because of the insanity of the prisoner might be presented to the Governor in like manner and with like effect as in other cases.

The attorneys for appellant have mistaken their remedy.

The petition and supplemental petition for a further stay of execution, to be ordered by this court, are overruled.