## DIAMOND et al. v. NEW YORK LIFE INS. CO.

### No. 35202.

District Court, N. D. Illinois, E. D.

Benjamin C. Bachrach and Walter Bachrach, both of Chicago, Ill., for plaintiffs.

Hamlin, Topliff & Cooper and Homer H. Cooper, all of Chicago, Ill., and Louis H. Cooke, of New York City, for defendant.

WOODWARD, District Judge.

This is a suit on a life insurance policy, on the life of Harry H. Diamond, for $5,000, dated November 26, 1930, whereby the defendant, in consideration of the payment of the premium therein stipulated, promised to pay to Nettie D. Diamond, the wife of the insured, "double the face of this policy upon receipt of due proof that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause."

The policy contained the following additional provisions:

"This Double Indemnity Benefit will not apply if the Insured's death resulted * * * from any violation of law by the Insured."

"This Policy * * * shall be incontestable after two years from its date of issue except for non-payment of premiums."

"All benefits under this policy are payable at the Home Office of the Company in the City and State of New York."

The policies of insurance were prepared and executed by the defendant in New York City, were mailed to a Chicago branch office of the company, and, on December 20, 1920, were, by an agent of the Chicago branch office, delivered to Harry H. Diamond in East Chicago, Ind., where the first annual premium was paid in full. Thereafter, during the lifetime of the insured the premiums were regularly paid. Nettie D. Diamond, the wife of the insured and the beneficiary named in the policy, came to her death on February 15, 1923. On March 31. 1923, Harry H. Diamond assigned the policies to the plaintiffs.

On November 14, 1924, Harry H. Diamond came to his death, as stated in the stipulation, in the manner following: "11. On November 14, 1924, Harry H. Diamond came to his death while at Michigan City, Indiana. On that day and at that place certain persons, *against the will and over the protest, and contrary to the intention of said Harry H. Diamond,* forcibly placed him in a certain chair and by means of certain straps and other devices kept him in a seated position in said chair, and while the said Harry H. Diamond was so seated and bound and *against his will, over his protest, and contrary to his intention,* a certain other person caused a current of electricity of sufficient intensity and strength to cause death to be ap-

plied to and continued through the body of said Harry H. Diamond until he was dead."

It further appears from the stipulation, however, that Harry H. Diamond, the insured, was indicted, tried, and convicted of the murder of Nettie D. Diamond in a court of competent jurisdiction in the state of Indiana, and, pursuant to the sentence of the Indiana court, suffered death by electrocution at the Indiana State Prison at Michigan City, Indiana. The "certain persons" named in paragraph 11 of the stipulation, above quoted, were the warden and deputy wardens of the Indiana State Prison acting pursuant to the judgment and sentence of the Indiana state courts.

The face amount of the policy ($5,000) has been paid without prejudice to the right to maintain this suit.

A jury was waived and the cause submitted to the court for trial.

The controverted issues in this case are:

(1) Did the death result "from bodily injury effected solely through * *' * accidental cause?"

(2) "Did the insured's death result * * * from any violation of law by the insured?"

To sustain the action it was incumbent on plaintiffs to prove that Diamond's death was the result of an "accidental cause." In order to sustain the averments of their declaration that Diamond came to his death through "accidental cause," plaintiffs offered paragraph 11 of the stipulation above quoted, and no other evidence on that question. That evidence, considered alone, shows that Diamond was sitting peacefully in his Indiana home when some gangsters entered his home, assaulted him, strapped him to a chair, and caused the lethal current of electricity to be passed through his body. That proof, standing alone, is sufficient to establish the fact of death by "accidental cause." To rebut the prima facie case made by plaintiff and to lead to the inference that Diamond's death did not result from an "accidental cause," defendant offered paragraph 12 of the stipulation, to the reception of which in evidence plaintiffs objected.

By paragraph 12 of the stipulation it appears that on March 21, 1923, Diamond was indicted in the criminal court of Lake county, Ind., for the murder, on February 15, 1923, of Nettie D. Diamond, his wife, on which he was tried, found guilty by the verdict of a jury of murder in the first degree,

on which verdict the court sentenced the defendant to "suffer death by having passed through his body a current of electricity of sufficient intensity to cause death," the sentence to be executed by the warden of the Indiana State Prison. The judgment was affirmed by the Supreme Court of Indiana. Diamond v. State, 195 Ind. 285, 144 N. E. 250, 466. Agreeably to said judgment the defendant was executed by the warden of the prison.

Plaintiffs strenuously contest the admissibility of paragraph 12.

■ Any evidence which shows, or tends to show, the real cause of the death of Diamond is material, relevant, and competent. Plaintiffs' position would preclude the defendant from showing, as it has the right to show, the cause of Diamond's death. The application of the fatal current of electricity was but the culmination of a long chain of circumstances in which Diamond was involved. In this case it becomes material and relevant to inquire into the cause of Diamond's death in order to determine whether it resulted from an accidental cause, or otherwise. The record in the criminal case is admissible to prove the manner of his death. This conclusion is warranted by the holding of the court in the case of Burt v. Union Central Life Insurance Company, 187 U. S. 362, 23 S. Ct. 139, 141, 47 L. Ed. 216. The insured, in that case, was convicted of murder and was hung. In a suit on the policy the insurer defended on the ground that public policy forbade the enforcement of the contract. As bearing upon the question of public policy the record in the criminal proceedings was offered. In discussing the admissibility of the record in the criminal case, the court say:

"But the stress of the plaintiffs' contention rests on the allegation that the insured was unjustly convicted and executed; that he did not in fact commit the crime of murder or participate therein, and that if he did it was while he was insane and not responsible for his actions. * * * It is said that the adjudication in the criminal case is not, as to these plaintiffs, conclusive of the insured's guilt; that they may show in this independent action facts which would satisfy a jury that the outcome of those legal proceedings was unjust because the insured did not participate in the crime, or, if he did, that he was legally irresponsible therefor by reason of insanity. It is not doubted that the criminal prosecution was an adjudication of the insured's guilt, his sanity and legal responsibility for the crime, but the principle of res judicata is that a judgment is conclusive only as between the parties and their privies, and these plaintiffs say they were not parties to the criminal action, and are not privies to either party thereto.

"If the case turned on the applicability of the principle of res judicata there would be little difficulty in reaching a conclusion. There is no identity of parties, nor are the two parties to this action privies to those in the criminal proceeding. A judgment in a criminal prosecution for assault and battery cannot be invoked as res judicata in a civil action by the party injured to recover damages. But there the two actions run along parallel lines, and the relief sought in each is the direct and natural result of the wrong complained of. Here the civil action is founded upon the result of the other,—cannot be maintained but for the fact of that result. If the insured had been acquitted, there would have been no cause of action on the policy, while the fact that the defendant in the illustration given was acquitted of the criminal offense would not bar the civil action to recover damages."

In the Burt Case the cause of death was material for the purpose of invoking the rule of public policy. In this case it is material to determine the cause of the death of insured.

The court holds that paragraph 12 of the stipulation is admissible in evidence.

■ The effect of this evidence is to show that Diamond died at the hands of the law under judgment of a court of competent jurisdiction. His death was the direct consequence of his intentional, malicious, and felonious undertaking. It is familiar that a man is presumed to intend the natural and probable consequences of his voluntary acts. Hutton v. States Accident Insurance Co., 267 Ill. 267, 108 N. E. 296, L. R. A. 1915E, 127, Ann. Cas. 1916C, 577. When Diamond killed his wife he knew that under the law of Indiana death was a possible result of his act. Acts 1905, p. 584, c. 169, in force April 15, 1905. Diamond, under the circumstances, could reasonably have anticipated that his death would ensue by reason of the murder of his wife. Death by electrocution was not a remote probability when the affair started. He intentionally engaged in an undertaking which might be expected to produce his death.

Diamond suffered death at the hands of the state of Indiana. While the agency of death was the arm of the law, yet in reality it was produced by his own felonious act.

No legal casuistry or legerdemain can convert capital punishment into a death resulting from accidental cause.

When a man murders another he knows that his own life may be forfeited to the state. If forfeited, pursuant to a judgment of a court of competent jurisdiction, his death is caused by his own hand just as truly as it would be had he placed a gun to his head and killed himself. Suicide is not an accident; neither is death at the hands of the law.

From what has been said it must follow that the death of Diamond resulted from a violation of law—a risk excepted by the terms of the double indemnity clause. In the case of Bloom v. Franklin Life Ins. Co., 97 Ind. 478, 49 Am. Rep. 469, the court say:

"In our opinion the law is this: A known violation of a positive law * * * avoids the policy if the natural and reasonable consequences of the violation are to increase the risk; a violation of law * * * does not avoid the policy if the natural and reasonable consequence of the act does not increase the risk. Whether the violation of law was the proximate cause of death, and whether it was an act increasing the risk, must in general be determined from the facts of the particular case. There must in all cases, whether the law violated be a criminal or a civil one, be some causative connection between the act which constituted the violation of law and the death of the assured. . * * *

"While the unlawful act of the assured must tend in the natural line of causation to his death, in order to work a forfeiture, it is not necessary that the act should be the direct cause, nor that the precise consequences which actually followed could have been foreseen. It is enough if the act is unlawful in itself, and the consequences flowing from it are such as might have been reasonably expected to happen, for, in such a case the ultimate result is traced back to the original proximate cause."

To the same effect are the cases of: Supreme Lodge v. Beck, 181 U. S. 49, 21 S. Ct. 532, 45 L. Ed. 741; Occidental Life Ins. Co. v. Holcomb (C. C. A. 5th) 10 F. (2d) 125; Flannagan v. Provident L. & A. Co. (C. C. A. 4th) 22 F. (2d) 136.

It is also urged with much force that, by virtue of the incontestable clause, the defendant is precluded from interposing the defenses that Diamond's death did not result through accidental cause or did result from violation of law.

Plaintiffs cannot invoke the incontestable clause. The defendant promised to pay the double indemnity in certain specific contingencies, among which was that the death of the insured should result from "bodily injury effected through * * * accidental cause." The liability of the insurer arises, under the double indemnity clause, only when and if the facts bring the plaintiff within the terms of the contract. The insurer may deny its liability, under the double indemnity clause, on the ground that the death of the insured did not occur in a manner whereby any liability arises. As stated by the court in the case of Sanders v. Jefferson Standard Life Ins. Co. (C. C. A. 5th) 10 F. (2d) 143, 144: "A provision for incontestability does not have the effect of converting a promise to pay on the happening of a stated contingency into a promise to pay whether such contingency does or does not happen. It cannot properly be said that a party to an instrument contests it by raising the question whether under its terms a liability asserted by another party has or has not accrued."

The incontestable clause is not applicable to this case. The defendant seeks to contest only the cause of action. This it may do. Sanders v. Jefferson Standard Life Ins. Co., supra; Mack v. Conn. Gen. Life Ins. Co. (C. C. A. 8th) 12 F. (2d) 416; Wright v. Phila. Life Ins. Co. (D. C. S. C.) 25 F. (2d) 514.

An order may be entered finding the issues for the defendant.